Before State Industrial Commission.

In the Matter of the Claim of Richard Frings, for Compensation under the Workmen's Compensation Law, against Pierce Arrow Motor Car Company, Employer, and Ætna Life Insurance Company, Insurance Carrier.

Third Department, March 6, 1918.

**Workmen's Compensation Law — loss of use of eye.**

A claimant, whose injured eye is rendered normal by the use of a glass, but can only be used by closing and not using the other eye, has not sustained a permanent loss of the use of an eye, within the meaning of subdivision 3 of section 15 of the Workmen's Compensation Law.

Woodward and Henry T. Kellogg, JJ., dissented.

Certification by the State Industrial Commission of a question to the Appellate Division, Third Department, pursuant to the provisions of the Workmen's Compensation Law.

*Merton E. Lewis, Attorney-General* [*E. C. Aiken, Deputy Attorney-General* of counsel], representing State Industrial Commission.

*Robert W. Bonynge*, counsel for State Industrial Commission.

*William H. Foster*, for the employer and insurance carrier.

LYON, J.:

The question certified by the State Industrial Commission is, " Did the injury as sustained by the claimant as found by the Commission herein, constitute within the meaning of the Workmen's Compensation Law the permanent loss of the use of an eye? "

The claimant was in the employ of the Pierce Arrow Motor Car Company at Buffalo, N. Y., as an assembler of motor car vehicles. In July, 1916, while chipping a casting he was struck in the right eye with a sharp piece of steel which penetrated the cornea, rupturing the lens, causing traumatic cataract resulting in acute glaucoma which necessitated the removal of the lens. The Commission found, " As a result of said accident the vision of Richard Frings was impaired as follows: The vision of the left or uninjured eye, uncorrected is 20/20 plus 6, that is to say, normal. The vision of the right or injured eye with a correcting glass, or lens, worn in front of the eye equal that of the lens of the eye which was removed, amounts to 20/20 plus 4. That is to say, a correcting glass worn with the right or injured eye gives to that eye normal vision. However, the correcting glass, or lens, can be worn on the injured eye and used only by closing and not using the uninjured eye. As a result of said accident, Richard Frings cannot use both eyes in conjunction. For all practical purposes he can use only one eye at a time, except that even though he is not using the injured eye it would protect him from moving objects in crossing the street. On September 21, 1916, Richard Frings returned to work for his employer at an actual daily wage of $3. Prior to the accident, his actual daily wage was $2.70." Compensation at a rate agreed upon between the claimant and the employer was paid to the claimant up to the time of his resuming work, and it may be observed that the disability occurred prior to the passage of the amendment awarding compensation in case of the partial loss of an eye. (Laws of 1917, chap. 705.)

The Commission made the following decision: " The claim of Richard Frings for the permanent loss of use of an eye is

denied on the ground that he has not sustained the permanent loss of use of an eye, without prejudice, however, to the claimant's renewing his claim when he can show loss of earnings due to the injury to his eye."

The eye specialist who attended the claimant testified " providing anything should happen to the other eye, a man with that such vision can and does and men do make a good living, necessarily in the same work, that is, the work in which they have been occupied at the time of injury. As for example, I had a man down at the dry dock who had a similar injury, but much more serious, seven years ago, who is still on the job at the same old thing and that is a riveter making his regular wages, and I have a man who until his death a short time ago, kept books, who had always been a timekeeper and who went back to his old occupation. So it is not all evidence that this man can't earn a living at that occupation."

Section 15, subdivision 3, of the Workmen's Compensation Law (Consol. Laws, chap. 67) provides that the permanent loss of the use of an eye shall be considered as the equivalent of the loss of such eye. It was said in *Matter of Grammici* v. *Zinn* (219 N. Y. 322, 325): " The expressions, ' loss ' and ' loss of the use,' as used in the law, should be given their unrestricted and ordinary meaning. In the case at bar, the hand, or the use of it, was not lost, provided it could fulfill, in a degree fair and worth considering, in any employment for which the claimant was physically and mentally fitted or adaptive, its normal and natural functions." To a like effect is *Matter of Kanzar* v. *Acorn Mfg. Co.* (219 N. Y. 326). Unquestionably when the lens of the eye was destroyed the use of the eye, unaided, was lost. It was only by providing an artificial lens outside the eye that the image could be so thrown upon the retina as to restore the sight. The retina was not destroyed, and through the use of an artificial lens the eye, so far as its use alone was concerned, could fulfill the natural function of an eye. The claimant has permanently lost the use of the eye, when so supplemented, to the extent only of using it in conjunction with the other eye, which he cannot do owing to the lack of co-ordination of images. Should the claimant lose his left eye he would be able, using the injured eye aided by a lens to fully perform his duties. It was said in

*Matter of Marhoffer* v. *Marhoffer* (220 N. Y. 543, 546): " The theory of the New York law is not indemnity for loss of a member or physical impairment as such, but compensation for disability to work made on the basis of average weekly wages."

I think there has not been the loss of an eye within the contemplation of the statute,. and that the certified question should be answered in the negative.

All concurred, except WOODWARD and HENRY T. KELLOGG, JJ., dissenting.

Question certified answered in the negative.