DAVID BILSKY, Respondent, *v.* MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, Appellant.

Supreme Court, Appellate Term, First Department, June 23, 1944.

*Albert Hirst* and *Arthur Blocksberg* for appellant.

*Walter F. Doyle* and *William J. Williams* for respondent.

SHIENTAG, J. The action is upon a policy of accident insurance for the recovery of a lump sum of $1,500 because of an alleged loss of the sight of plaintiff's right eye. Both sides having moved for the direction of a verdict, the court below found in favor of the plaintiff. The evidence fully sustains the finding that while at his place of work the plaintiff received a blow to his right eye which resulted several weeks later in the condition complained of.

Three grounds are urged upon this appeal: (1) that the plaintiff's proof of loss was insufficient; (2) that the plaintiff may not recover because his loss was not preceded by a period of total disability as called for by the policy; (3) that while the plaintiff has lost binocular vision, he has not irrecoverably lost the entire sight of his right eye; that loss of binocular vision is not tantamount to irrecoverable loss of sight; that the policy does not insure plaintiff against loss of binocular vision.

The proof of loss furnished to the insurer was sufficient. It was received and retained by the defendant without objection. It stated the substance of the plaintiff's claim; that he had lost the sight of his eye while at work; that he had suffered no disability in point of time; that sight probably would be restored by operation, but this was doubtful. If the defendant's contentions concerning coverage are valid, the plaintiff could not recover, assuming the facts as stated in his proof of claim. The proof itself was, nevertheless, sufficient to enable the insurer " to frame an intelligent estimate of its rights and liabilities " (*Wachtel* v. *Equitable Life Assur. Soc.*, 266 N. Y. 345, 352; *O'Reilly* v. *Guardian Mutual Life Ins. Co.*, 60 N. Y. 169, 173).

The defendant contends that the plaintiff may not recover because his loss was not preceded by a period of total disability. On this point the language of the policy is so ambiguous as to be practically meaningless. In the " insuring clause " the defendant insures the plaintiff against loss of sight by accident. In the heading under accident indemnities referring to " regular specific losses ", the policy provides: " If the insured shall sustain bodily injuries as described in the insuring clause,

which injuries shall independently and exclusively of disease and all other causes continuously and wholly disable the insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the association will pay * * * for loss ·of either eye $1,500."

The plaintiff was not disabled " continuously and wholly ". After receiving the injury he remained away from work for about an hour and thereafter continued his regular employment. But there is nothing in the policy which requires disability from accident to continue for any definite period before the defendant's liability for specific loss arises. As the learned court below pointed out: " If we accept the defendant's construction of the policy we ignore the meaning which the average person seeking the benefit of the provisions would read into it."

The words " continuously and wholly disabled " have, therefore, no clear meaning in this policy when used in connection with what may be called a schedule loss. All ambiguities in policies of this nature must be resolved in favor of the insured. The conclusion here reached on this point is strengthened by the fact that part C of the policy provides that if the injuries as described in the insuring clause " do not result in any of the specific losses described in parts A and B but shall wholly and continuously disable the insured for one day or more, the association will pay a monthly indemnity at the rate of $50 per month for the first fifteen days and at the rate of $100 per month thereafter so long as the assured lives and suffers said total loss of time." How long, therefore, is an insured required to be wholly and continuously disabled in order to secure the benefits provided for a specific loss? The policy is silent on that point. The thought of both parties to the contract of insurance was that it operated to indemnify for a loss of a member of the body rather than for disability occasioned in connection with such loss. " Such is the ordinary meaning which ' the average policyholder of ordinary intelligence as well as the insurer, would attach to it ' " (*Block* v. *Standard Ins. Co. of N. Y.*, 292 N. Y. 270, 274; *Abrams* v. *Great American Ins. Co.*, 269 N. Y. 90, 92).

Finally, it is urged that the plaintiff may not prevail because the policy provides that the loss of an eye shall mean the " total and irrecoverable loss of entire sight thereof ". The testimony is that as the result of his accident the plaintiff sustained what is known as a traumatic cataract of his right eye. There was complete loss of vision in that eye. This loss of vision might be corrected if an operation were performed to

remove the lens of the eye and to substitute in place thereof, in the form of an eyeglass, an artificial lens powerful enough to restore vision. If that were done and the operation were successful, the vision in the right eye, with the use of a lens, might be restored to normal. The difficulty, however, is that, even if all of the foregoing took place, the two eyes, that is, the restored injured eye and the uninjured eye could not work together. There would be a loss of what is known as binocular vision. In fact, the resulting condition, if it were attempted to use both eyes as above indicated, would be worse than the total loss of the use of either eye. A dangerous condition of double vision would result. The only way in which the restored eye could be serviceable would be if the uninjured left eye were covered up and not used at all.

The only medical testimony in the case is to the effect that there is a difference of opinion as to whether you should operate in a situation of this kind. The doctor who testified said he had advised an operation but not with a view to restoring the plaintiff's " vision to usefulness because the two eyes can never work together." He said he advised the operation because if, by any chance, the sight of the uninjured eye were lost in the future, the patient could then fall back on the use of the injured eye to which vision was restored by artificial means.

The question, therefore, is whether in the circumstances mentioned, there has been an irrecoverable loss of the entire sight of the right eye within the meaning of the policy. There would be no doubt that this would be so were it not for a decision rendered in 1918 in a case arising under the Workmen's Compensation Law, in the Appellate Division, Third Department, by a divided court of three to two. (*Frings* v. *Pierce Arrow Motor Car Co.*, 182 App. Div. 445, 447.) The case did not go to the Court of Appeals. That case held: " Unquestionably when the lens of the eye was destroyed the use of the eye, unaided, was lost. It was only by providing an artificial lens outside the eye that an image could be so thrown upon the retina as to restore the sight. The retina was not destroyed, and through the use of an artificial lens the eye, so far as its use alone was concerned, could fulfill the natural function of an eye. The claimant has permanently lost the use of the eye, when so supplemented, to the extent only of using it in conjunction with the other eye, which he cannot do owing to the lack of co-ordination of images. Should the claimant lose his left eye he would be able, using the injured eye aided by a lens to fully perform his duties."

The court, therefore, held that there was not the loss of an eye within the contemplation of the statute. This decision aroused wide criticism. It was followed by an amendment to the Workmen's Compensation Law specifically providing that compensation for loss of binocular vision shall be the same as for the loss of an eye. While that amendment is not at all determinative of the question here presented, it is strongly suggestive of what is commonly regarded as loss of the sight of an eye. Even before such legislation was enacted, and in the same year that the *Frings* case was decided, the Appellate Division of the third department had before it an appeal involving a case where, with the use of a powerful glass, the claimant had a vision of about one third with the injured eye, but in order to utilize it he had to close the other eye. The Appellate Division affirmed an award for loss of the sight of the injured eye and said, per JOHN M. KELLOGG, P. J.: "I think the rule in the *Frings* case should not be extended beyond the facts there found." (*Smith* v. *F. & B. Construction Co.*, 185 App. Div. 51, 52; see, also, *Arnold* v. *S. R. Mfg. Co.*, 208 App. Div. 305, holding that the amendment to the Workmen's Compensation Law, above referred to, relating to loss of binocular vision, was not retroactive.)

In *Juergens Bros. Co.* v. *Indus. Com.* (290 Ill. 420, 424) the Supreme Court of Illinois considered the *Frings* case and refused to follow it. "The reasoning in that case", the Illinois court said, "appears to us to be based on remote speculation as to the happening of another event which in itself would be an additional misfortune to the applicant, and we are not disposed to adopt such reasoning. We are of the opinion that the legislature did not intend that when a man has lost the use of one eye he should nevertheless be deprived of compensation for that loss because he might be unfortunate enough to lose the other eye and thereby gain a certain limited use of the eye first injured. We believe the true rule should be, that where, as here, the employee has lost all practical use of an eye, which practical use cannot be restored so long as he has his other eye, such amounts, in effect, to the loss of the eye".

The court further said: "The application of laws of this character should not be made to depend upon fine-spun theories based upon scientific technicalities but such laws should be given a practical construction and application. For all practical purposes when a man has lost the sight of an eye he has lost the eye, and to say that the statute providing compensation for the loss of the sight of an eye does not apply here because

of the remote possibility of the " claimant " losing his good eye, whereby he can through artificial means gain a certain amount of use of the injured member, is to place a construction on a remedial act which deprives it of all practical effect." (290 Ill. 423.)

We fail to see any distinction between a situation where there is loss of binocular vision, but where the sight of the injured eye can be artifically restored to almost normal, and where only a portion of the sight of that injured eye can be so restored.

The views here expressed find support in the holdings of other courts in the same and in analogous situations. (*Lindhout* v. *Brochu & Haas,* 255 Mich. 234; *Otoe Food Products Co.* v. *Cruickshank,* 141 Neb. 298; *O'Brien's Case,* 228 Mass. 211.)

The judgment below should be affirmed, with costs.

HAMMER, J., concurs with SHIENTAG, J.; EDER, J., dissents. Judgment affirmed.