**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Petronilo ESPINOSA, Appellee.**

No. 14001.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 7, 1962.

Rehearing Denied Dec. 12, 1962.

Second Motion for Rehearing Denied Jan. 9, 1963.

Groce & Hebdon, Charles L. Smith, San Antonio, for appellant.

Rudy Rice, Frank R. Southers, San Antonio, for appellee.

MURRAY, Chief Justice.

This is a workmen's compensation case brought by Petronilo Espinosa against the Texas Employers' Insurance Association, which arose out of an injury to Espinosa's left eye on December 28, 1959, while working for Cecil Ruby Construction Company, hereinafter referred to as "Ruby". The trial was to a jury and resulted in judgment in Espinosa's favor for total and permanent disability, from which judgment Texas Employers' Insurance Association has prosecuted this appeal.

It is undisputed that Espinosa on December 28, 1959, while working for Ruby, received an accidental injury to his left eye. The jury found (1) that the injury to plaintiff's left eye has extended to and affected his body generally, resulting in permanent incapacity; (2) that such incapacity was total, (3) was not caused solely by the incapacity to his left eye, and (4) was not caused solely by the fall he had in his father-in-law's tavern in the summer of 1960.

■ Appellant contends that the findings of the jury that Espinosa's injury to his left eye extended to and affected his head and body, causing total and permanent disability was supported by "no evidence" and in any event was so against the great weight and preponderance of the evidence as to be manifestly unfair and unjust. We overrule this contention.

Dr. Dan A. Russell, Jr., was called as a witness by appellant and testified as to his background as an ophthalmologist, which showed him to be an eye surgeon of great skill and ability. His qualifications were not questioned. He testified that he performed surgery on Espinosa on December 28, 1959,

the day he was injured. In describing the location of the cut on Espinosa's eye, the doctor said: "The colored part of the eye is called the iris. That gives the color to the eye, whether it be blue, brown or such. Over this is a clear part, best described, probably, as a watch crystal over the watch, called a cornea. This is what we see through. There was a cut through this cornea, this clear part, and some of this colored part was hanging through the wound here." In reply to the question as to what he did when he performed the surgery, the doctor stated: "The first thing we did was to get this colored part out of the wound. We did this by reaching through and grabbing it and cutting off this part of the colored part and then we put three stitches through this wound to make it air tight, and we put air in here to make sure it held." Dr. Russell continued to see Espinosa until January 5, 1960, when he left the hospital. Thereafter Espinosa was seen by Dr. Reily in his office for some time.

In May, 1961, Dr. Russell again saw Espinosa and made an examination of his left eye. At that time Espinosa was complaining of headaches and pain when he turned his eye. Dr. Russell gave Espinosa's left eye a very thorough examination and found only two defects in that eye, the scar on the cornea, "which you can't do away with," and "the defect in the iris, which is the colored part of the eye. The pupil." The doctor tested the vision in both eyes. He found Espinosa had 20/20, or normal sight, in his right eye, and 20/30 in the left, which is below normal, but with glasses he could see out of his left eye 20/20 minus one, meaning he missed one character out of five in the 20/20 line, which is just slightly below normal. The doctor testified that the scar and the defect in the pupil might cause irritation in the eye; he did not see any redness or other symptoms of irritation at the time he examined Espinosa on May 18, 1961. The doctor could find no connection between the injury to the eye and the headaches Espinosa claimed

to have. He did not examine the six muscles of the eye which lead from the eye to the brain, as this would have required surgery, but he did observe the functioning of the muscles and found nothing wrong with their functioning. Dr. Russell further testified that "the purpose of the pupil and the iris is like in a camera, to let in light or cut light out, and this is an imperfect pupil in that it cannot cut down bright sunlight and will cause some dazzling appearance in bright sunlight." In answer to the question, "Does that dazzling go away after he has been in bright sunlight or not?" he answered: "I honestly cannot answer that. I don't know. I mean a lot of people never complain about it. Other people it bothers them some. There is a lot of variation in people." In reply to whether the eye with the scar would be any more irritable than a normal eye, the doctor answered: "Conceivably it could be. If it is, you will see redness and pain, particularly redness and irritation of the eye, which he did not have when I saw him on May 18th. * * * I did not observe any difficulty on movement of the eyes." When asked, "Could you find anything in connection with his headaches?" the doctor replied, "No, sir, I could not. I looked for a muscle imbalance, which sometimes will cause headaches. I also looked in the back part of the eye, at the optic nerve and so forth, which you can see with this ophthalmoscope * * *. I saw no abnormality." The doctor further testified that there are two kinds of nerves attached to the eye, motor and sensory, and that Espinosa's pain could have been caused by sensory nerves.

In answer to the following question: "Now, as to how well he can see and how well he can't see, of course, there again he is the man that knows, isn't he?" the doctor answered, "That is right." In answer to the question, "What I am saying again is that that man out there on that job and the men out there working with him know more as to what his condition is under those conditions than you do?" the doctor

answered: "To a certain extent I think that is true."

"Q And that person himself, out there working and the men working with him—making the test and all—and seeing him and working with him and in the sunlight and the weather would know more than you would know, wouldn't they, doctor, as to the effect that the dazzling of the sunlight has on him, and the weather conditions and all on his eye?

"A They would know more how he reacted to this, that is true."

█ Espinosa testified and also called to the witness stand his wife, Aurora Espinosa, Gregorio T. Rodriguez, Douglas Leroy Johnson, Henry Gonzales and Carmen Pinales Espinosa. The plaintiff testified how the injury occurred, the pain he has suffered since, his fear of going upon bridges and other high places to work, the headaches he now has, his inability to stand bright sunlight, the irritation he receives from the wind, the dust and sweat. He admitted working since his injury, but stated he did so from great necessity and did not perform his usual duties. He testified to being dizzy and having constant headaches, that he was given limited work and not required to go up on bridges or to work around dust from the cement, as it irritated his eyes; that his eyesight was blurred by the injury to his left eye and the scar over the pupil. In this he was corroborated by all the men with whom he worked. They told of his inability to do the same work he had done before he received his injury, and of his complaints of dizziness and headaches after, but not before, his eye injury. We have read the testimony of all these witnesses, and if their testimony is to be believed it is sufficient to sustain the findings of the jury, and such findings are not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. It is true that Espinosa did not offer medical testimony, but the in-

jury and the extent thereof and its effect upon his ability to do his work can be established by lay witnesses, and expert testimony is not necessarily required. Texas Employers' Ins. Ass'n. v. Fletcher, Tex.Civ. App., 356 S.W.2d 359; Insurance Company of Texas v. Anderson, Tex.Civ.App., 272 S.W.2d 772; Texas Employers' Ins. Ass'n. v. Scott, Tex.Civ.App., 233 S.W.2d 171; Maryland Casualty Co. v. Hearks, Tex.Civ. App., 188 S.W.2d 262, affirmed, 144 Tex. 317, 190 S.W.2d 62.

There is nothing in the testimony of Dr. Russell which shows that the extent and effect of Espinosa's injury could not be established by lay witnesses. The fact that Dr. Russell did not find any connection between the injury of Espinosa's eye and the headaches is not conclusive on the matter, and if the jury believed the testimony of Espinosa and his witnesses, they might well find that the injury to his eye had extended to and affected his head and other parts of his body and totally and permanently injured him, as those terms are used and defined in connection with the Workmen's Compensation Statutes, Art. 8306 et seq., Vernon's Tex.Civ.Stats.

We do not find it necessary to pass upon other questions raised by appellant.

The judgment is affirmed.

On Motion for Rehearing.

BARROW, Justice.

I respectfully dissent.

The majority have affirmed the judgment of the trial court solely upon the proposition that the injury to Espinosa's left eye extended to and affected his body generally, thereby resulting in total and permanent incapacity. It is seen, however, that the evidence of incapacity relates only to the specific injury and the attempted utilization of the eye's remaining use. Therefore, this case falls squarely within the rule set forth in Coleman v. Hartford Accident & Indemnity Co., Tex.Civ.App., 297 S.W.2d 236,

writ refused, which holds that such evidence does not raise an issue of a general disability.

It is undisputed that Espinosa's only injury was a specific injury. He received a cut in the cornea of his left eye which required three stitches. The majority opinion sets forth all the complaints of Espinosa. In passing upon the proposition of whether or not there is any evidence that the injury extended to and affected his body generally, we are not concerned with those complaints specifically related to the left eye. Espinosa's fear of going on high places and dizziness was related to his inability to see well out of this eye. There is no contention of a neurosis. The only complaint not directly related to the eye is of headaches when he works in the sunlight. The burden was upon Espinosa to establish that the eye injury extended to and affected his body generally. Texas Employers' Ins. Ass'n. v. Brownlee, 152 Tex. 247, 256 S.W.2d 76.

The Association produced the only medical evidence. This doctor did not have to be believed when he testified unequivocally that he could find no connection between the headaches and the eye injury. The only defect found by Dr. Russell related solely to the eye. On the other hand, disbelieving this medical witness would not establish the converse. Espinosa did not offer any evidence to show a causal connection, but relies upon his testimony that he had headaches after working.

The cases cited in the majority opinion hold that the issue as to *disability*, and the *extent thereof*, may be established by lay testimony, even though it may be contradicted by medical evidence. They are not controlling here, however, in that our problem is to show a causal connection between the cut on Espinosa's left eye and the headaches. I have been unable to find a case which permits the jury to establish, without the benefit of evidence, a causal connection between a specific injury and subsequent pain in other parts of the body. It is fundamental that a lay witness may testify as to

pain in his body. Casualty Ins. Co. of Cal. v. Salinas, 160 Tex. 445, 333 S.W.2d 109. A lay witness is usually not qualified to testify as to the cause of, or to diagnose, a disease, and the jury should not be permitted to draw its conclusions by speculation or surmise. Scott v. Liberty Mut. Ins. Co., Tex.Civ.App., 204 S.W.2d 16, writ ref., n. r. e.; Lumbermen's Mut. Ins. Co. v. Vaughn, Tex.Civ.App., 174 S.W.2d 1001, no writ history. A medical witness is qualified to show the connection between an injury to a specific member and pain in other parts of the body. Pennsylvania Threshermen and Farmers Mut. Cas. Ins. Co. v. Tatom, Tex.Civ.App., 342 S.W.2d 25, writ ref., n. r. e.; General Accident Fire and Life Assur. Corp. v. Murphy, Tex.Civ.App., 339 S.W.2d 392, writ ref., n. r. e.; Texas Emp. Ins. Ass'n. v. Polk, Tex.Civ.App., 269 S.W.2d 582, writ ref., n. r. e. These cases are all distinguished from Espinosa's case by the medical evidence showing a causal connection between the specific member and the other part of the body to which the specific injury extended and affected. Here Espinosa's evidence, when viewed most favorably to him, shows only that he receives headaches upon exposure of his eye. This is evidence in support of the specific injury only and is not evidence that the specific injury extended to and affected his body generally. Texas Employers' Ins. Ass'n. v. Brownlee, supra; Coleman v. Hartford Accident & Indemnity Co., supra. There is no evidence to support this jury finding.

The jury findings of total loss of sight in Espinosa's left eye would not support a judgment because of the improper definition contained in the charge. The trial court submitted the following definition over the proper objection of the Association: "By the term 'total loss of sight,' as used in this charge, is meant that the vision is so affected as to substantially and materially impair the sight thereof in the practical performance of its functions in the pursuit of a laboring man." This definition is improper. Angelina Casualty Co. v. Holt,

6 Tex.Supreme Court Journal 65, 362 S.W.2d 99; Travelers Ins. Co. v. Seabolt, Tex., 361 S.W.2d 204.

I would reverse the judgment and remand the case for a new trial.