The RELIABLE LIFE INSURANCE COM-
PANY, Appellant,

v.

C. B. STEPTOE, Appellee.

No. 578.

Court of Civil Appeals of Texas,
Tyler.

Sept. 2, 1971.

Eldred Smith, Longview, for appellant.

Law Offices of LaSalle & Baker, K. Baker, Carthage, for appellee.

McKAY, Justice.

Appellee C. B. Steptoe sued the appellant insurance company on two policies of insurance for the loss of sight in his left eye. Trial was before a jury and judgment was rendered on the verdict for appellee for $1,700.00 for loss of sight to his left eye, $500.00 attorney's fee, and $204.00 as penalty under Article 3.62, Insurance Code, V.A.T.S. Appellant brings this appeal on eleven points.

This case was before this court on a prior appeal and the opinion is found in 435 S.W.2d 630.

On December 11, 1966, appellee injured his left eye by having a plum bush thorn hit him in the eye. He was hospitalized four days but had no further treatment. He testified that as a result of the injury, he had lost the sight of his left eye and that he could not see out of it.

The insurance policies issued by appellant provided " * * * (t)he loss of an eye or eyes means the complete and irrecoverable loss of the sight thereof." Appellant maintains by points 1 and 8 that appellee had not suffered the complete and irrecoverable loss of sight to his left eye because he could recover his left eye vision by surgery, and appellant relies upon the testimony of Dr. Peyton, an ophthalmologist. Dr. Peyton testified that appellee had a scar on the cornea of his left eye indicating that a perforation had occurred, and there was also damage to the lens, resulting in a cataract formation; that plaintiff's vision in his left eye was reduced to light reception or possibly vague hand motion but greatly reduced; that he could perceive light and could vaguely see a hand motion in front of him at very close range; that he could not see enough to distinguish anything at all; that it was permanent unless the cataract was removed; that in his opinion it was not irrecoverable assuming a successful cataract operation with no disease found in the retina; that in his opinion it is possible a successful cataract operation could be done; that there was between 75% and 90% chance of regaining useful vision in the eye; that in his opinion, the loss of appellee's eye was not complete and irrecoverable, but for all practical purposes appellee had lost the sight of his left eye; that appellee had lost the sight of his left eye except for light perception and bare hand motion and that the useful vision was lost.

The jury found in answer to three special issues [1] that appellee had lost the com-

---

1. Special Issue No. 1. From a preponderance of the evidence do you find that the Plaintiff, C. B. Steptoe, has lost the complete sight of his left eye?

"You are instructed that the complete loss of sight *witin* the meaning of the accident policy means that the sight left is of no practical use."

ANSWER: "It is complete" or "It is not complete".

ANSWER: It is complete.

Special Issue No. 2. Do you find from a preponderance of the evidence that the loss of sight of Plaintiff's, C. B. STEPTOE, left eye is irrecoverable unless a successful operation is performed on such left eye.

ANSWER: It is irrecoverable or It is not irrecoverable.

ANSWER: It is irrecoverable.

You are instructed that the term irrecoverable means "Not capable of being recovered, regained or remedied."

plete sight of his left eye, that the sight was irrecoverable unless a successful operation is performed and that an ordinary prudent man in the same or similar circumstances would not undergo a cataract operation on his left eye.

Appellee, over appellant's vigorous objection, testified that he had a heart attack on February 25, 1969, which caused his being hospitalized for 19 days, and that as a result, he did not work any more as a jeweler the remainder of that year. He further testified he never did go back to Dr. Peyton or any eye specialist or attempt to have eye surgery or any kind of operation to have the cataract removed. In answer to the question: " * * * in your condition and condition that has been reported to you by the doctors concerning your eye, do you want to have an operation?", he testified "I'm not figuring on having one." His testimony shows that the heart attack occurred after the prior appeal of this case. Upon the prior appeal, the case was reversed and remanded by this court because there was no evidence on the issue whether an ordinary prudent person would undergo surgery and therefore such issue was not presented to the trial court for decision.

We hold that the word "complete" means the practical loss of the use of the eye. Complete means entire. The appellee lost the practical use of his left eye as he could only distinguish light and vaguely see a hand motion at very close range, and he could not distinguish any object at all. The Tenth Circuit in Order of United Commercial Travelers of America v. Knorr, 112 F.2d 679, 682 (1940) stated: "One has lost an eye when the eye is no longer of some practical value or benefit. It is not required that the last vestige of light be extinguished before it can be said that one has lost an eye." Wallace v. Insurance Company of North America, 415 F.2d 542 (6 Cir., 1969); International Travelers' Ass'n v. Rogers, 163 S.W. 421 (Tex.Civ.App., Dallas, 1914, writ ref.).

"Complete loss of sight," within the insurance contract, means destruction of ability to perceive, distinguish, and recognize objects to such extent that what remains will not confer any of benefits of sight or vision to practical and useful extent. 8 Words and Phrases, p. 412; Mulcahey v. Brotherhood of Ry. Trainmen, 229 Mo.App. 610, 79 S.W.2d 759.

It is undisputed that the trial court's definition of "irrecoverable" as being "not capable of being recovered, regained or remedied" is correct. As we pointed out in the first appeal of this case, loss of sight which can be recovered, regained or remedied through proper medical or surgical treatment is not to be considered an irrevocable loss unless such medical or surgical treatment would not be undergone by an ordinary prudent person under the same or similar circumstances. Southland Life Insurance Company v. Dunn, 71 S.W.2d 1103 (Tex.Civ.App., El Paso, 1934, err. dism.); Firemen and Policemen's Pension Fund Board of Trustees of San Antonio v. Villareal, 438 S.W.2d 387 (Tex.Civ.App., San Antonio, 1968, writ ref., n. r. e.).

The undisputed evidence shows that there was a very good chance that a successful cataract operation could be performed, and that appellee's sight would be restored in his left eye. Apparently, appellee's position is that because he had a heart attack, he did not "figure on having a cataract operation." Appellant's objection to appellee's testimony that he had had a heart attack should have been sustained because appellee, as a layman, was not qualified to

Special Issue No. 3. Do you find from a preponderance of the evidence that an ordinary prudent man in the same or similar circumstances as the Plaintiff, C. B. Steptoe, would not undergo a cataract operation on his left eye?

Answer "He would not undergo an operation" or "He would undergo an operation."
ANSWER: He would not undergo an operation.

so testify. Appellee could testify in regard to the nature and effect of his injury or his illness or his physical condition, but as this court pointed out in Tyler Mirror & Glass Company v. Simpkins, 407 S.W.2d 807 (Tex.Civ.App., Tyler, 1966, writ ref., n. r. e.) ;

> " ' * * * But there are certain scientific fields wherein the average juror or layman does not possess the knowledge or information from which to draw his own conclusions; and must be guided by the opinions of experts who have acquired scientific information on the subject. * * * *The cause, diagnosis and treatment of diseases usually come within this category.* * * * ' " (Emphasis provided).

In Texas Employers' Insurance Association v. Espinosa, 363 S.W.2d 871 (Tex. Civ.App., San Antonio, 1962, rev., 367 S. W.2d 667, Sup.Ct., 1963), in the dissenting opinion at page 874, we find the following:

> " * * * A lay witness is usually not qualified to testify as to the cause of, or to diagnose, a disease, and the jury should not be permitted to draw its conclusions by speculation or surmise. * * * "

Appellee could testify about his pain and where it was located and how it made him feel, but at the time of his illness and at the time of trial, he could not, nor could his wife, testify to the conclusion that he had a heart attack. In the absence of his testimony, and that of his wife, there is no evidence as to why an ordinary prudent man in the same or similar circumstances could not or would not undergo a cataract operation on his left eye to recover his sight. The record is therefore void of evidence that he had a heart attack or that if he did, he had or had not recovered from it, or that he was disabled to such a degree that cataract surgery would endanger his life or his health and would therefore be inadvisable. It is understandable that appellee may have preferred not to have cataract surgery, but there must be some evidentiary medical basis for such decision before the jury would be authorized to excuse him from undergoing such surgery to recover sight in his left eye.

Appellant's first, fifth and eighth points are sustained and his other points are not reached. We conclude that the trial court's judgment must be reversed and the cause remanded.

Reversed and remanded.