LEWIS v METROPOLITAN LIFE INSURANCE COMPANY

Docket No. 57761. Decided August 26, 1976. On application by defendant for leave to appeal the Supreme Court, in lieu of granting leave to appeal, affirmed and remanded in a per curiam opinion.

Robert E. and Elsie M. Lewis brought a complaint against Metropolitan Insurance Company for payment under an insurance policy for loss of sight in one eye of plaintiff Robert E. Lewis. Genesee Circuit Court, Donald R. Freeman, J., granted summary judgment for the defendant. The Court of Appeals, Quinn, P. J., and D. E. Holbrook and D. F. Walsh, JJ., reversed (Docket No. 21336). Defendant applies for leave to appeal to resolve a conflict between panels of the Court of Appeals in the meaning of "total and irrecoverable loss of sight of one eye" in an insurance contract. *Held:*

The existence of peripheral vision in the injured eye presents a close factual question whether the plaintiff's injured eye is of any practical use to him. His physician's testimony is that to use the injured eye, the plaintiff would have to turn his head. Presumably, if allowed to hear his and other testimony, the trier of fact would be better able than this Court to determine whether plaintiff's right eye is or can be of any practical use or benefit to him. Giving the benefit of every reasonable doubt to the plaintiff, the Court is not satisfied that it will be impossible for him to support his claim at trial. The insurance policy should be interpreted to require loss of all practical use of the eye, not blindness in the literal sense. The test should be whether the eye is or can be of any practical use or benefit to the insured.

The decision of the Court of Appeals is affirmed and the matter remanded for trial.

Justice Lindemer dissented on the ground that the contract provided for compensation for "total and irrecoverable loss of sight of one eye", and the test adopted rewrites the contract.

65 Mich App 279; 237 NW2d 289 (1975) affirmed.

*Sump v St Paul Fire & Marine Insurance Co,* 21 Mich App 160; 175 NW2d 44 (1970), disapproved.

*Rubenstein, Pruchnicki & Chittle* for defendant.

PER CURIAM. Defendant's application for leave to appeal asks that we resolve a conflict between panels of the Court of Appeals on the meaning of "total and irrecoverable loss of sight of one eye"[1] in an insurance contract. In *Sump v St Paul Fire & Marine Insurance Co,* 21 Mich App 160; 175 NW2d 44 (1970), Sidney Sump suffered a reduction in vision in the left eye, correctable to 20/200. The Court of Appeals refused to equate "entire loss of sight" with loss of "useful sight" or "practical use":

> "If it appears that the insured still has some sight in the injured eye, he is not entitled to recover under a provision in the policy which provides that the loss of an eye shall mean the irrecoverable loss of the entire sight thereof. Under the present Michigan law, a 75% or 80% loss of an eye is not loss of the entire sight, as required by the terms of the policy in question. Such an injured eye may have little practical use and it may come within the meaning of industrial loss of vision, but for this Court to find such a total loss of sight, we would have to change the meaning of the policy language, *viz.,* 'irrecoverable loss of the entire sight.' " 21 Mich App 160, 164.

Robert E. Lewis suffered a choroidal tear in his right eye as a result of a motorcycle accident. He lost 80% of his vision in the right eye. In a deposition, his doctor stated:

> "*Q:* Okay, were he to close the left eye and use only the right eye and look straight ahead of him, what if anything would he be able to see?
> "*A:* He couldn't see very well straight ahead of him at all. There would be a blank spot in the middle of his

---

[1] The contract language interpreted by the other panel was somewhat different: "irrecoverable loss of the entire sight".

vision. However, his side vision would be normal. It's just that particular type of injury.

*"Q:* So he couldn't see what was in front of him?

*"A:* Not very well. See, a person like that could see a large object but they couldn't tell who the person was.

*"Q:* Would this prevent him from any normal functions?

*"A:* Oh, if he had one eye closed?

*"Q:* Yes.

*"A:* If his normal eye was closed, yes, he would be incapable of driving. He would be incapable of any reading or whatever, watching television or any of the things like that. He could walk around, because he has peripheral vision and he wouldn't bump into things."

Relying on *Sump,* the circuit judge granted defendant's motion for summary judgment. The Court of Appeals reversed:

"In our view, the *Sump* court failed to apply an important principle of interpretation, namely: ascertaining that meaning of the contract which the insured would reasonably expect, *Zurich Insurance Co v Rombough,* 384 Mich 228, 233; 180 NW2d 775, 777 (1970).

"Can a person seeking insurance coverage for loss of sight reasonably expect that the term 'total and irrecoverable loss of sight' means only total blindness? Or that he is not insured if he can make out the sun on a clear day? We think not. It is reasonable for such a person to expect that the term means loss of useful or practical sight, and we so interpret it." 65 Mich App 279, 280–281; 237 NW2d 289 (1975).

Pursuant to GCR 853.2(4), we affirm the judgment of the Court of Appeals and remand to the circuit court for trial.

Plaintiff has not been allowed to testify as to the extent of his incapacity. Presumably, if allowed to hear his and other testimony, the trier of fact would be better able than this Court to determine

whether plaintiff's right eye is or can be of any practical use or benefit to him.

The existence of peripheral vision in the injured eye does present a close factual question. However, close factual questions are the stuff of which trials are made and are not properly subject to disposition on motions for summary judgment. As was stated in *Clark v Standard Accident Insurance Co,* 43 Cal App 2d 563, 568, 570; 111 P2d 353, 112 P2d 298, 299 (1941):

"It may be well to state here, also, that in view of the undisputed evidence of the existence of peripheral vision in the injured eye, whether practical use of the eye has been lost presents a very close question. * * * However, where questions of this nature arise, their determination depends so much upon the facts of each individual case that it would create a dangerous and undoubtedly harsh precedent to establish, as a rule of law, that the existence of peripheral vision in every case constituted existence of practical use of eyesight." (Citation omitted.)

Because of peripheral vision remaining, plaintiff might use his injured eye to avoid bumping into things. However, the testimony is that, to so use the injured eye, plaintiff would have to turn his head. The inference is that the right eye could be of benefit only if the sound left eye were not being used.

In short, giving the benefit of every reasonable doubt to the plaintiff, we are not satisfied that it will be impossible for him to support his claim at trial. See *Rizzo v Kretschmer,* 389 Mich 363, 370–374; 207 NW2d 316 (1973).

We expressly disapprove of the *Sump* decision insofar as it would deny recovery on the basis that the insured has some sight, however slight, in the injured eye not corrected by surgical or prosthetic

procedure. The policy should be interpreted to require loss of all practical use of the eye. Blindness in the literal sense should not be necessary. Anno: *Fracture or loss of member, or loss of sight, contemplated by accident policy,* 87 ALR2d 481. Regardless of the eye's ability to distinguish light or perceive gross objects, the test should be whether the eye is or can be of any practical use or benefit to the insured.

Affirmed, with costs to plaintiff.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, and RYAN, JJ., concurred.

LINDEMER, J. I dissent. The contract provided for compensation for "total and irrecoverable loss of sight of one eye". The majority changes that to the test of whether or not the eye is "of any practical use or benefit" to the insured. Rewriting contracts is, unfortunately, not new. It, to me, is nonetheless improper.