**Anthony COTTON, Plaintiff,**

v.

**PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, Defendant.**

**No. CV 95–1740 (ADS).**

United States District Court, E.D. New York.

Jan. 24, 1997.

---

Finkel Goldstein Berzow & Rosenbloom (Richard Howard, of counsel), New York City, for Plaintiff.

Lane & Mittendorf L.L.P. (Preben Jensen, of counsel), New York City, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This diversity action arises from the claims of the plaintiff, Anthony Cotton ("Cotton" or the "plaintiff"), against the defendant, Provident Life and Casualty Insurance Company ("Provident" or the "defendant"), based on the defendant's alleged failure to pay disability benefits pursuant to the terms of two policies held by the plaintiff. Presently before the Court are Provident's motion and Cotton's cross motion for summary judgment pursuant to Fed.R.Civ.P. 56.

### I. *Background*

The plaintiff is a resident of Nassau County. The defendant is a foreign corporation licensed to do business within the State of New York and maintains a principal office in Chattanooga, Tennessee.

The defendant has issued two insurance policies to the plaintiff: (1) Policy No. 36GC–6378, effective August 1, 1970 (the "1970 Policy"); and (2) Policy No. 36–334–66769 effective July 1, 1987 (the "1987 Policy"). Both policies insure Cotton against disability. The 1970 Policy provides in relevant part:

**Part 3. Loss of Sight, Speech or Hearing, or use of Two Members—Accident or Sickness:** If injuries or sickness shall result in the entire and irrecoverable loss of (1) sight, (2) speech, or (3) hearing, or shall result in the entire and irrecoverable loss of (a) both hands, (b) both feet, or (c) one hand and one foot, and satisfactorily proof of such loss is furnished, the Insured shall be deemed to be totally disabled and shall while he lives be entitled to periodically receive indemnity at the rate of Monthly Benefit for Total Disability, beginning on the day of such loss, and for as long as the applicable Maximum Benefit Period shown in Policy Schedule, without requirement of further medical attention, without requirement of further proof, and without regard to whether the Insured thereafter engages in any gainful occupation.

The 1987 Policy provides in relevant part:

**Presumptive Total Disability—Loss of Speech, Hearing, Sight or the Use of Two Limbs**

You will be presumed totally disabled if Injuries or Sickness results in:

1. the entire and irrecoverable loss of speech or hearing;

2. the entire and irrecoverable loss of sight of both eyes; or

3. the entire and irrecoverable loss of the use of both hands, both feet or one hand and one foot.

You must present satisfactory proof of your loss. Your ability to engage in any occupation will not matter. Further medical care and attendance will not be required. Benefits will be paid according to the Total Disability provisions of this policy. But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3. If loss occurs prior to age 65, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

The 1970 Policy provides for benefits in the amount of $700 per month for life. The 1987 Policy provides for benefits in the amount of $2500 per month for life.

According to his supporting affidavit, in 1989, Cotton suffered a stroke. His vision began to deteriorate shortly thereafter due to a condition known as "optic atrophy." When it deteriorated to the point that it could not be corrected to better than 20/200, on a scale where 20/20 would constitute normal vision, the plaintiff registered as legally blind with the State of New York. Cotton argues that his vision has now degenerated to the point that "when [he] was tested by the defendant's expert optometrist, [his] vision was documented at 5/100 in [his] left eye, and 5/200 in [his] right eye." Further, the plaintiff suffers from a condition referred to as "nystagmus," which causes his eyes to abnormally and involuntarily shift from side to side.

Nevertheless, the defendant denied Cotton's claims that he was entitled to benefits under the two policies' reasoning that the plaintiff has not suffered an "entire and irrecoverable" loss of his "sight." Although Provident concedes that Cotton's vision has greatly diminished, it argues that he has not lost his sight entirely, and therefore he has not qualified for the benefits he seeks.

On May 2, 1995, the plaintiff filed this lawsuit in federal court, based on the facts outlined above. The complaint contains three causes of action for failure to pay insurance benefits, a declaration ordering Provident to pay benefits in the future, and sanctions based on the defendant's alleged "bad faith."

The defendant moves for summary judgment arguing that the evidence demonstrates that Cotton is not entitled to the insurance benefits he seeks as a matter of law. The plaintiff opposes Provident's motion and cross moves for summary judgment maintaining that he is entitled to benefits as a matter of law.

## II. Discussion

### A. Summary judgment standard

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v.*

*Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City,* 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd., Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion and cross motion for summary judgment.

### B. *The parties' motions*

The defendant's motion for summary judgment can be broken down into two arguments. Initially, Provident claims that an "entire and irrecoverable loss of sight" as that phrase is applied in the two insurance policies, means more than a loss of "practical use" of sight which Cotton claims he suffers. Alternatively, even if the relevant terms are construed to mean a loss of "practical use" of sight, Provident maintains that the plaintiff fails to meet this lower standard as well. As a result, Provident contends that is entitled to judgment as matter of law.

■■■ This case is essentially one of contract interpretation. *See, e.g., Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.,* 19 F.3d 78, 81 (2d Cir.1994) (applying contract principles to interpret an insurance policy). Under New York law, which applies in this case, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract. *Village*

*of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995). An insurance policy will be read as a whole in order to determine whether an ambiguity exists, and a policy should be read so that no provision is rendered meaningless. *Columbia v. Continental Ins. Co.,* 83 N.Y.2d 618, 628, 612 N.Y.S.2d 345, 349, 634 N.E.2d 946 (1994). "[I]f the provisions are clear and unambiguous, courts are to enforce them as written." *Sylvan Beach,* 55 F.3d at 115, *citing, Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.,* 80 N.Y.2d 986, 987, 592 N.Y.S.2d 645, 646, 607 N.E.2d 792, 793 (1992); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) ("When the terms of an insurance policy are clear and unambiguous, they must be accorded their ordinary meaning") (applying Connecticut law). However, in insurance cases, if the policy language is ambiguous, the ambiguity must be interpreted in favor of the insured. *Sylvan Beach,* 55 F.3d at 115.

### 1. *The policy as a whole*

Applying these standards, the plaintiff initially looks to the surrounding language of 1987 Policy, containing virtually identical language to the 1970 Policy. As set forth above, this policy states in relevant part that benefits will be paid where,

Injuries or Sickness results in:

1. the entire and irrecoverable loss of speech or hearing;

2. the *entire and irrecoverable loss of sight* of both eyes; or

3. the *entire and irrecoverable loss of the use* of both hands, both feet or one hand and one foot.

(emphasis supplied).

Provident argues that the phrase "loss of sight" and "loss of the use of" two limbs, contain different language because they have distinct meanings. The defendant however, does not further explain the nature of this distinction.

■■■ In the Court's view this language merely demonstrates that injuries to different parts of the body require different descriptive language. In the third subsection, the phrase "entire and irrecoverable loss of

the use" is followed by a list combinations of hands and feet which, if sufficiently injured, would entitle an insured to benefits. The term "use" is applied because it is sufficiently general in description to cover the various functions of hands and feet. The term "sight" however, is specific to use of the eyes. The subsequent reference to "loss of sight of both eyes" in the 1987 Policy demonstrates only that loss of sight in one eye will not trigger the right to benefits. In the Court's view, this difference in specificity of the words "use" and "sight" explains the difference in the language applied in the second and third subsections set forth above, not a difference in the requirement as to severity of the injury. *Cf. Massachusetts Indemnity & Life Ins. Co. v. Schupper,* 301 So.2d 789 (Fla.Ct.App.3d Dist.1974) (addressing a policy containing similarly distinct language with respect to injuries to eyes, hands and feet without recognizing any implications therefrom on an insured's right to benefits). Accordingly, the defendant's motion for summary judgment on this ground is denied.

In reaching this conclusion the Court notes that this argument appears to be related to an analogy that Provident attempts to create between Second Circuit case law interpreting the phrase "actual severance" of a limb as it is applied in other insurance policies and the language "entire ... loss of sight" applied here. In *Francis v. INA Life Ins. Co.,* 809 F.2d 183 (2d Cir.1987), the insurance policy provided for certain benefits in the case of "actual severance" of a limb. The Second Circuit reasoned that the use of the word "actual" to modify the term "severance" was meant to require something more than loss of use of the limb. *Id.* at 186; *see also Reid v. Life Ins. Co. of N. Am.,* 718 F.2d 677, 682 (4th Cir.1983) ("actual severance" means more than an injury to the limb). While the Court recognizes the logic applied in *Francis* and *Reid,* the Court believes that injuries to an insured's limbs are not analogous to a loss of sight. Actual severance as opposed to a lesser injury is readily determinable. A reduction in sight which is severely limiting, as opposed to one which constitutes an "entire ... loss," is more difficult to quantify. Accordingly, the Court views an injury affecting vision better suited to application of a "loss of practical use" standard than severance of a limb.

### 2. The phrase "entire and irrecoverable loss of sight"

Provident's second argument is that the word "entire," as it is applied to modify the phrase "loss of sight" is unambiguous and means "where no vestige of sight remains." Accordingly, because Cotton has not lost all vestiges of his sight, the defendant contends that the Court should find that he is not entitled to any benefits, and judgment should be entered in Provident's favor as a matter of law. *See, e.g., Breed v. Insurance Co. of N. Am.,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282–83 (1978) (where policy language is unambiguous, the plain meaning will be enforced). On the other hand, Cotton argues that this language should be interpreted to mean a "loss of practical use" of sight, a lower standard, which the plaintiff maintains that the parties concede he has satisfied.

In support of its interpretation, the defendant relies on dictionary definitions of the word "entire," such as "whole, complete," and "with no element or part expected." *See* Webster's Third International Dictionary at 758 (1981). Indeed some courts have accepted this narrow reading. In *State Farm Mutual Automobile Ins. Co. v. Sewell,* 223 Ga. 31, 153 S.E.2d 432 (1967), the Supreme Court of Georgia was in the same situation as this Court is now, namely interpreting the meaning of the phrase "entire and irrecoverable loss of sight" as it is applied in a disability insurance policy. That Court held that the word "'entire' embraces all and leaves nothing. This means that if there exists enough sight to count fingers, see that a shirt is blue, see objects, though indistinctly as the evidence shows the insured could do, his sight is not entirely lost." *Id.* 153 S.E.2d at 433. In reaching this conclusion the court admitted that "this policy sharply restricts its coverage to cases where no eyesight remains after the injury...." *Id.* "But when the policy limits the coverage in unambiguous terms, as was done here, courts, despite their dislike of such coverage, have no choice but to accept without alteration all such terms and limit

liability thereto." *Id.* 153 S.E.2d at 433–34. This interpretation by the Georgia Supreme Court in 1967 however, represents a minority view, and from the Court's perspective, is unpersuasive.

The great weight of authority, which this Court now joins, is set forth in *Bilsky v. Mutual Ben. Health & Accident Ass'n,* 182 Misc. 122, 49 N.Y.S.2d 848 (App. Term 1st Dep't), *aff'd,* 268 A.D. 973, 52 N.Y.S.2d 576 (1st Dep't 1944). In *Bilsky,* an insurance policy provided for payment of benefits where the insured suffered "total and irrecoverable loss of entire sight." Relying in part on an Illinois Supreme Court decision, *Juergens Bros. Co. v. Industrial Comm'n,* 290 Ill. 420, 125 N.E. 337, 338 (1919), the court concluded that such language requires the loss of "all practical use of an eye." *Id.* at 125, 49 N.Y.S.2d at 851.

Decisions from other states reaching a similar conclusion include *Brinson v. Old Republic Life Ins. Co.,* 247 N.C. 85, 100 S.E.2d 246 (1957). In *Brinson,* the Supreme Court of North Carolina held recognized that

> [p]rovisions in accident policies for the payment of a specified indemnity for loss of sight are liberally construed in favor of the insured, and within such provisions there is an entire loss of sight, although sight is not completely destroyed, if what sight is left is of no practical use or benefit.

*Id.* 100 S.E.2d at 247. In *Schupper,* the Florida Court of Appeals, interpreting similar language, held

> that whether a disability insurance policy insures against loss of sight, loss of entire sight, or entire loss of sight as in the case *sub judice* or whether it refers to blindness or total blindness, it is generally interpreted to mean loss of practical use of sight rather than literal blindness.

*Schupper,* 301 So.2d at 791; *see also Locomotive Eng'rs Mutual Life & Accident Ass'n v. Vandergriff,* 192 Ark. 244, 91 S.W.2d 271, 273 (1936); *Lewis v. Metropolitan Life Ins. Co.,* 65 Mich.App. 279, 237 N.W.2d 289, 290 (1975), *aff'd,* 397 Mich. 481, 245 N.W.2d 9 (1976); *Reliable Life Ins. Co. v. Steptoe,* 471 S.W.2d 430, 432 (Tex.Civ.App.1971); *Clark v. Standard Accident Ins. Co.,* 43 Cal.App.2d 563, 111 P.2d 353, 354–55 (1941); *Mulcahey*

*v. Brotherhood of Ry Trainmen,* 79 S.W.2d 759, 765 (Mo.Ct.App.1934); *Roy v. Allstate Ins. Co.,* 34 Conn.Sup. 650, 383 A.2d 637, 638–39 (1978); *Hohn v. Nationwide Ins. Co.,* 311 Pa.Super. 227, 457 A.2d 858, 859–60 (1982); John Alan Appleman & Jean Appleman, Insurance Law, § 702.75 (1981); *cf. Harlan v. Aetna Ins. Co.,* 6 Wash.App. 837, 496 P.2d 532, 533–34 (1972) (endorsing jury instruction stating that "entire loss of sight" means "[n]o useful vision" rather than "utter blindness").

Federal courts which considered this language have reached a similar conclusion. *See, e.g., Rice v. Military Sales & Serv. Co.,* 621 F.2d 83, 86 (4th Cir.1980); *Wallace v. Insurance Co. of N. Amer.,* 415 F.2d 542, 544 (6th Cir.1969); *Order of United Commercial Travelers v. Knorr,* 112 F.2d 679, 682 (10th Cir.1940).

The Court believes the majority reasoning to be the better one. As the North Carolina Supreme Court recognized in *Brinson,* "[c]an anyone doubt that one who can barely distinguish daylight from darkness has lost his entire sight?" *Brinson,* 100 S.E.2d at 248. Or as the Michigan Appellate Court restated the question in *Lewis,* "[c]an a person seeking insurance coverage for loss of sight reasonably expect that the term 'total and irrecoverable loss of sight' means only total blindness? Or that he is not insured if he can make out the sun on a clear day?" *Lewis,* 237 N.W.2d at 290. This Court now agrees and answers the first question in the affirmative and the second two in the negative. Accordingly, the term "entire and irrecoverable loss of sight" will be construed to mean "loss of the practical use of sight."

In reaching this conclusion, the Court notes Provident's argument that endorsing this interpretation is unworkable because it requires a definition for the phrase "loss of practical use." While the Court agrees that this term must be defined, this hurdle will not operate as a bar to the Court's decision. Indeed two of the cases cited above provide the definition the defendant seeks. In *Steptoe,* the Texas Court of Appeals defined the phrase "complete loss of sight," as requiring "destruction of ability to perceive, distin-

guish, and recognize objects to such extent that what remains will not confer any benefits of sight or vision to practical or useful extent." *Steptoe*, 471 S.W.2d at 432, citing, *Mulcahey*, 79 S.W.2d at 765. Similarly, in *Roy*, the Connecticut Superior Court, Appellate Session, defined "practical use" as not necessarily requiring use in a "particular calling or occupation, but rather that use which will render practical service in respect to many needs and pleasures." *Roy*, 383 A.2d at 638–39, citing, *Clark*, 111 P.2d at 354. Accordingly, the need to define the phrase "loss of practical use" will not preclude its application.

### 3. *The condition of the plaintiff's eyes*

■ Finally, Provident argues that it is entitled to summary judgment because, even if the Court adopts the "loss of practical use" standard, Cotton has admitted that he has sufficient sight to warrant denying him benefits and dismissing the complaint as a matter of law. The plaintiff contests Provident's position arguing that the "parties each recognize and acknowledge that the plaintiff has suffered a severe loss of vision" sufficient to merit judgment in his favor as a matter of law. The Court disagrees with both conclusions.

Without belaboring the analysis, the Court finds that the issue of whether Cotton has suffered a sufficient loss of sight to support his claims is one of fact, not law. *See, e.g., Clark*, 111 P.2d at 354 ("[t]he question is primarily one of fact"); *Hohn*, 457 A.2d at 860 ("the question of whether an entire loss was sustained is a factual one"). For example, Provident asserts that Cotton admits that he can read his wristwatch to the extent that he can distinguish 12:45 from 1:15. Cotton explains this admission in his supporting affidavit, stating that if he holds an oversized watch a few inches from his face, he can estimate the time provided that he already knows the approximate time.

In addition, Provident notes that in his deposition testimony, Cotton stated that he occasionally watches television. The plaintiff explains this concession by arguing that he listens to television. He can only make out "blurred objects" if he sits with his "nose practically pressed to the screen."

The defendant also submits a number of exhibits in further support of its motion, such as a progress report from "The Lighthouse, Inc.," which is apparently an institution that provides services to those with vision impairments. According to the report, dated March 23, 1995, outdoors, Cotton uses

> peripheral vision well. He does not contact pedestrians or obstacles and does not overstep the curb. He is able to ID and use visual landmarks. St. crossings were not timed properly, and Cl. was shown how to use parallel traffic surge for safe crossings. Cl. had expressed some difficulty using stairs, but a flight of subway stairs was travelled with Cl. showing little difficulty.

Cotton challenges the report which is unsigned. In his affidavit, he states that he is unable to see landmarks. He does not overstep curbs because he uses his other senses. For example, Cotton listens to traffic noises, which he states differ as he approaches a curb. He explains that he was able to navigate the subway station stairs because he used a handrail which ended with the staircase, and because of a change in lighting.

Reviewing these competing allegations, and the affidavit submitted to the Court during oral argument, the Court finds that there are sufficient issues of material fact to defeat both the defendant's motion and the plaintiff's cross motion for summary judgment.

### III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the motion of the defendant, and the cross motion of the plaintiff for summary judgment pursuant to Fed.R.Civ.P. 56 are both denied; and it is further

ORDERED, that the parties appear as previously directed, for jury selection on February 3, 1997 at 9:00 a.m.

SO ORDERED.