[No. 872-1.    Division One—Panel 2.    May 1, 1972.]

MANSON B. HARLAN, *Appellant*, v. AETNA LIFE
INSURANCE COMPANY, *Respondent*.

*DeGarmo, Leedy, Oles & Morrison* and *Richard M. Stanislaw,* for appellant.

*Thomas, Holman & Dawson* and *Millard C. Thomas,* for respondent.

JAMES, J.—As the result of an automobile collision on April 16, 1966, the lens and iris of Mr. Harlan's left eye were severely damaged. At the time of the injury, he was insured by Aetna Life Insurance Company under a group policy which provided a benefit for "the entire and irrecov-

erable loss of sight" in an eye as a direct and proximate result of and within 90 days of an accidental injury.

Surgery was performed immediately, but Mr. Harlan lost 60 per cent of the iris and all useful portions of the lens of his eye. After surgery, because his uncorrected left eye vision was no better than 20/400, he was fitted with a contact lens.

On July 14, 1966, Mr. Harlan had 20/40 vision in his left eye while using the contact lens, but he could not make his eyes work together. Each eye was of use to him only if he closed the other. He discontinued using the contact lens because, he alleges, the lens kept falling out, getting lost in his eye, and causing considerable discomfort.

In May of 1968 it was discovered that Mr. Harlan was suffering from a detached retina, and that the detachment was caused by the accident. He was operated upon, but was left with what Aetna admits is "no useful vision in his left eye."

Mr. Harlan sued under the group insurance policy, seeking to recover for the loss of his eye. The jury returned a verdict for Aetna. Mr. Harlan's motion for judgment n.o.v. or a new trial was denied, and he appeals.

Mr. Harlan contends that the judgment should be reversed because: the trial judge erred in failing (1) to instruct that the phrase "entire and irrecoverable loss of sight" means "practical loss of sight or useful vision"; (2) to instruct that "the fact that he may or may not have had some limited sight more than 90 days after the accident does not destroy the coverage provided by the policy"; (3) to grant judgment n.o.v., because for all *practical* purposes the eye was lost from the date of injury and (4) to grant a new trial, because as a matter of public policy, penalizing Mr. Harlan for his vain attempts to save his eye would result in discouraging the seeking of medical treatment.

The phrase "entire and irrecoverable loss of sight" is capable of varying interpretations; loss of useful vision, utter blindness, or something between loss of useful vision and utter blindness. *See* Annot., 87 A.L.R.2d 481 (1963).

*Kearney v. Washington Nat'l Ins. Co.*, 184 Wash. 579, 584, 52 P.2d 903 (1935), states: "The question whether the respondent at the time of the trial had irrevocably lost the entire sight of both eyes was submitted to the jury, and, *under the instruction,* they necessarily found that there had not been such an entire loss of sight of both eyes." (Italics ours.) The decision fails to reveal what test was contained in the jury instruction to which it refers.

■ However, the court has also stated:

There is another principle applying to contracts of insurance to the effect that, if they are so drawn as to require interpretation and fairly susceptible of two different conclusions, the one will be adopted most favorable to the insured; and will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms prepared by experts at the instance of the insurer, in the preparation of which the insured has no voice. [Citations omitted.]

*Guaranty Trust Co. v. Continental Life Ins. Co.*, 159 Wash. 683, 688, 294 P. 585 (1930).

■ In this case the trial judge did adopt the construction most favorable to the insured. He instructed the jury that "[t]he words 'entire loss of sight' do not mean utter blindness but means [*sic*] no useful vision." Instruction 3. This instruction was broad enough to allow Mr. Harlan to argue his theory of the law. The additional instructions which he proposed were adequately embraced in the instruction given by the trial judge. There is no error in refusing to give additional instructions when the subject matter is adequately covered in a prior instruction. *State v. Huff,* 76 Wn.2d 577, 458 P.2d 180 (1969); *Tate v. Rommel,* 3 Wn. App. 933, 478 P.2d 242 (1970).

■ Although the evidence is in conflict, there is substantial evidence that Mr. Harlan's vision was "useful." Because the jury's decision is supported by substantial evidence, the trial judge did not err in denying the motion for judgment n.o.v. *Omeitt v. Department of Labor & Indus.,*

21 Wn.2d 684, 685-86, 152 P.2d 973 (1944); *Sutherland v. Department of Labor & Indus.,* 4 Wn. App. 333, 481 P.2d 453 (1971).

█ This insurance contract is an aleatory or betting contract. Mr. Harlan made an absolute and unconditional promise to pay the premium, and in return Aetna made a conditional and aleatory promise to pay a much larger sum upon the happening of an uncertain event within a certain period of time.

Corbin, in discussing aleatory contracts, correctly stated the result which normally follows.

> Both parties to such a promise—the promisor and the promisee—are incurring a hazard or taking a chance; and the hazard is so far consciously incurred that neither party can justly complain if the chance goes against him.

3A A. Corbin, Contracts § 728 (1960).

Mr. Harlan's public policy argument, though appealing, might more appropriately be addressed to the legislature. It cannot be said that the trial judge abused his discretion by failing to adopt it. We find no error in the failure to grant a new trial. *State v. Lemieux,* 75 Wn.2d 89, 448 P.2d 943 (1968); *Usher v. Leach,* 3 Wn. App. 344, 474 P.2d 932 (1970).

Affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.