James F. RICE, Appellant,

v.

**MILITARY SALES & SERVICE CO., Appellee.**

No. 79–1106.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1979.

Decided May 1, 1980.

---

84

Jerome P. Friedlander, II, Arlington, Va. (Friedlander, Friedlander & Brooks, P. C., Arlington, Va., on brief), for appellant.

George D. Varoutsos, Arlington, Va., for appellee.

Before WINTER, RUSSELL and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The plaintiff/appellant has sued the defendant/appellee, his employer, for loss of benefits due to the alleged failure of the defendant to procure, as agreed, coverage for him under a group insurance policy providing, among other things, accidental benefits to its beneficiaries, and available for "All officers and full-time Salaried and Commissioned Employees" of the defendant.[1] Under the terms of the group policy, a covered employee was entitled to recover half the principal sum, (*i. e.*, $50,000) for the "entire and irrecoverable loss of sight" of "one eye" due to an accident. The plaintiff alleged that he had been shot accidentally in the right eye during the hunting trip and that, as a result, he had lost the "entire and irrecoverable loss of sight" in his right eye. Had the defendant-employer properly processed coverage for him under the group policy, as the defendant had agreed to do, he would, under his theory of the case, have been entitled to $50,000 under the policy for the accidental loss of sight in his right eye. He claimed that, since his loss of such benefits was due to the defendant's negligence

---

1. Federal jurisdiction of the action is based on diversity.

The plaintiff initially joined the insurer, Hartford Accident and Indemnity Company, as a defendant but the action against it was dismissed on summary judgment. There has been no appeal from that dismissal. The only controversy remaining is between the plaintiff and his employer, the defendant.

in failing to process coverage for him under the policy, he was entitled to recover such benefits from the defendant.

After answer this action of the plaintiff proceeded to trial before a jury. At the conclusion of plaintiff's evidence, the district court granted the defendant's motion for a directed verdict. The basis for the district court's ruling was that, in its opinion, the evidence offered by the plaintiff was "clear, unambiguous, uncontradicted" that the plaintiff had not "lost the sight in one eye," and presumably even had the defendant processed the insurance, the plaintiff would not have been entitled to recover under the policy and, consequently, he would have suffered no loss by reason of any negligence of the defendant (which personally the defendant denies). From that ruling and the judgment entered thereon, the plaintiff has appealed. We reverse.

■ So far as this appeal is concerned, the single question posed is whether there was sufficient evidence at the conclusion of plaintiff's testimony, to warrant submission to the jury of the question whether the plaintiff had suffered accidentally the "entire and irrecoverable loss of sight" in his right eye for which loss, had there been coverage, under the policy, he would have been entitled to recovery.[2] In reviewing the record on that issue, we are required to accept as true the testimony developed by the plaintiff during his presentation and to view all inferences reasonably deduced therefrom favorably to the plaintiff. *Ard v. Seaboard Coast Line Railroad Company*, (4th Cir. 1973) 487 F.2d 456, 457; *Boleski v. American Export Lines, Inc.*, (4th Cir. 1967) 385 F.2d 69, 74. That evidence, as included by agreement of the parties in the appendix, consisted of two witnesses, the plaintiff and a medical witness. The plaintiff testified to the hunting accident when he was shot in his right eye. He then detailed the efforts made by him to treat the injury thus inflicted. He had undergone at least three operations in an attempt to save the sight of the eye. The "extensive surgical repair"

conducted on his injured eye during his several operations resulted in the removal of the lens of the eye and the vitreous jelly that fills most of the interior of the eye.

Even after he had undergone these operations, the plaintiff could not distinguish with his right eye "any forms or figures;" the most he could see with that eye was the difference between "light" and "dark." The only method of improving the plaintiff's sight in his right eye was by fitting the eye with a contact lens. With the use of the contact lens the plaintiff did have some "vision" in the right eye. But so far as giving the plaintiff any practical use of his injured eye, the installation of the contact lens was, in the language of the medical witness who fitted the lens, "a failure primarily because of the constant appearance of double vision." The physician said "the double vision resulted from the fact that, due to the restrictive motions of his right eye, his brain was receiving one image from the uninjured left eye and a different image from this treated right eye, and the brain was perceiving these images in two different positions . . . ." He elaborated that, "[d]oubling of imagery is an absolute situation that, under no circumstances, can any of us function in society with double imagery which would be [as in this case] one-hundred percent in all fields of gaze." This "doubling of imagery" made the plaintiff's condition, according to the physician, "intolerable" and rendered it impossible for him "to functionally use this lens." The plaintiff, also, has light sensitivity in his eye because of his injury. The physician added that the reasonable way for the plaintiff to function with this injury, considering all his problems, "is by total occlusion of all imagery from his right eye, namely by use of the black patch." This meant, in the opinion of the medical witness, that the plaintiff could not use his injured eye "in an ordinary useful manner" and has lost "100 per cent" of the "practical use of his right eye."

The medical testimony did suggest that, if the plaintiff would cover his good left eye

---

**2.** There are apparently other issues in the case but they were not raised or decided in connec-

tion with the motion for a directed verdict and we do not reach such issues on this appeal.

and have his right eye adjusted with contact lens, he would have vision in his right eye but there would be "considerable distortion of vision." This would mean, however, that the plaintiff was giving up the use of his perfectly good eye in order to rely on the imperfect vision afforded him by the injured eye. What in effect all of this added up to is that the plaintiff can obtain vision from either eye, provided the injured eye, when used, is fitted with contact lens, *but he can never use both eyes at the same time.*

■ We think the above evidence was sufficient to withstand a motion for a directed verdict. The first requirement of the policy was that the loss of sight be "entire." "Entire loss" of the use of an eye does not mean blindness; the term has been defined generally to mean "that the sight left is of no practical use." *Wallace v. Insurance Company of North America,* (6th Cir. 1969) 415 F.2d 542, 544 (under Kentucky law); *Order of United Commercial Travelers v. Knorr,* (10th Cir. 1940) 112 F.2d 679, 682; *Roy v. Allstate Ins. Co.,* (1978) 34 Conn.Sup. 650, 383 A.2d 637, 638; *Lewis v. Metropolitan Life Ins. Co.,* (1976) 397 Mich. 481, 245 N.W.2d 9, 11;[3] *Brinson v. Old Republic Life Insurance Company,* (1957) 247 N.C. 85, 100 S.E.2d 246, 248. And this is the rule in Texas, whose law the parties seem to agree is controlling in this case. *Pan-American Life Ins. Co. v. Terrell,* (5th Cir. 1929) 29 F.2d 460, 462 (under Texas law); *Reliable Life Insurance Company v. Steptoe,* (Tex.Civ.App.1971) 471 S.W.2d 430, 432 (citing and following *Order of United Commercial Travelers v. Knorr,* (10th Cir. 1940) 112 F.2d 679. Specifically, the ability "to perceive light and objects, but no ability to distinguish and recognize objects," which was the extent of plaintiff's ability to see with the right eye, meets the criteria for "entire" loss of sight under Texas law. *Pan American Life Ins. Co. v. Terrell,* (5th Cir. 1929) 29 F.2d 462.

■ The mere fact that the plaintiff may have a certain usable vision in his right eye when fitted with contact lens if he covers his good left eye is of no moment in the resolution of whether his loss of sight was "entire." When he fits the injured eye with a contact lens, he is forced to block his good left eye to secure any use of the injured eye. Whether he uses a contact lens in the injured eye or not, the result is the same in either event: The plaintiff loses the complete or "entire" sight of one eye. Such a loss is compensable under a policy insuring against the "entire" or "total" loss of sight of one eye. *Travelers' Protective Ass'n. of America v. Ward,* (1933) 99 Ind.App. 97, 187 N.E. 55, stated the reason for this conclusion:

> "While it is true that under certain conditions, [the plaintiff] has sight in his left [or defective] eye, it is equally true and expert testimony on both sides shows that the plaintiff can use but one eye at a time. If he can use but one eye at a time, he has lost the sight of the other eye." 187 N.E. p. 57.

The reliance of the defendant on *Harlan v. Aetna Life Insurance Company,* (1972) 6 Wash.App. 837, 496 P.2d 532, is misplaced in this connection. The plaintiff's condition in that case was not too different from that of the plaintiff here. The trial judge there, unlike the district judge here, ruled that the plaintiff's showing warranted submission of the issue of "entire loss of sight" to the jury under an instruction that " '[t]he words "entire loss of sight" do not mean utter blindness but means [sic] no useful life.' " The jury resolved the issue in favor of the insurance company and the plaintiff appealed from a denial of a new trial. The appellate court approved the instructions and sustained the denial of a new trial. Implicit in its ruling was a finding that the case was properly submitted to the jury because of the conflict in the evidence but "[b]ecause the jury's decision [in favor of the insurance company] is supported by substantial evidence, the trial judge did not err in denying

---

**3.** The court overruled *Sump v. St. Paul Fire & Marine Insurance Company,* (1970) 21 Mich. App. 160, 175 N.W.2d 44, which was to the contrary.

the motion for judgment n.o.v."[4] Had the district judge in this case submitted the case to the jury and the jury had returned a verdict for the insurance company—as was the case in *Harlan*—we would likely do just what the Washington Court did in *Harlan* in the event of a motion for a retrial by the plaintiff on grounds similar to those in *Harlan*. But that stage was not reached in this case because, unlike the court in *Harlan*, the district court here refused to submit the case to the jury on the issue of whether the plaintiff's loss of sight was "entire." And it is because the district court did refuse in this case to submit the case to the jury that the plaintiff has appealed.

The second requirement of the policy was that the plaintiff's loss of sight be "irrecoverable." Again, we are of the opinion that there was sufficient evidence that the plaintiff's loss of sight was "irrecoverable" within the meaning of the policy. "Irrecoverable" in this context has been defined by the Texas courts as a loss of sight which is "not capable of being recovered, regained or remedied."[5] Or, as a more recent Texas case has defined irrecoverability of loss of sight: that term means a loss of sight which may not "be completely or substantially recovered, regained or remedied, by proper medical or surgical treatment and which treatment would be undergone by an ordinary prudent person under the same circumstances." *Lee Boone v. United Founders Life Ins. Co.*, (Tex.Civ.App.1978) 565 S.W.2d 380, 381[6] RNRE (application for writ of error refused, no reversible error).

 As we have said, the plaintiff in this case has had three operations, none of which has restored his sight in the right eye. The only procedure which has been suggested by any physician as possibly correcting in any way the plaintiff's loss of sight was the use of a contact lens. The procedure, however, has been tried and has been found to create problems which made the use of a contact lens as a means of regaining his sight impossible. His sight is thus not regainable on operation or remediable in the opinion of the treating physician by any known procedure. We have no difficulty in concluding on the basis of this evidence that the irrecoverability of plaintiff's loss of sight in one eye was for the jury.

It follows from the foregoing that the district court erred in directing a verdict at the conclusion of the plaintiff's evidence on the ground that there was no proof of "entire and irrecoverable loss of sight" of one eye by the plaintiff. In so concluding, we express no opinion on any other defenses which the defendant may have asserted but which were not a ground for the district court's grant of judgment. Our decision is limited to the facts presented in the record by the plaintiff and to the legal point on which the district court based its decision.

The judgment below is accordingly reversed and the cause is remanded to the district court for retrial.

REVERSED and REMANDED for new trial.

---

4. 496 P.2d at 534.

5. *Reliable Life Ins. Co. v. Steploe*, 471 S.W.2d at 432.

6. Indeed, there are some authorities to the effect that even if sight can be restored by the use of an artificial lens, the insured is entitled to recover for the "entire and irrecoverable sight of" an eye under an accident policy. *Winegarden v. Peninsular Life Ins. Co.*, (Fla. App.1978) 363 So.2d 1172, 1173; *Knuckles v. Metropolitan Life Insurance Company*, (1971) 25 Utah 2d 319, 480 P.2d 745, 747. The reason-ing behind these decisions was stated in *Knuckles* thus:

> "[The insurance company] says if one gone blind can be made to see by artificial means, his sight is not totally gone and has been recaptured, and that is what the language means. The plaintiff says not so, because once something has gone it is gone and cannot be recovered,—such as natural teeth once gone are nonetheless gone though dentures may serve one better and without the hazard of cavities."