[No. 11246-5-I.   Division One.   May 21, 1984.]

WASHINGTON STATE UNIVERSITY, *Appellant,* v. INDUSTRIAL ROCK PRODUCTS, INC., *Respondent.*

*Diamond & Sylvester* and *James M. Thomas,* for appellant.

*Carney, Stephenson, Badley, Smith & Mueller, R. Jack Stephenson,* and *Laura M. Murphy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is what limit, if any, there is to the liability of one who is strictly liable for an abnormally dangerous activity.

This property damage action arises out of an explosion which occurred in a dormitory on the Washington State University campus at Pullman, Washington. The University, as plaintiff, brought suit against Industrial Rock Products, Inc. asking approximately $200,000 for damages sustained to the dormitory and its contents in an explosion of explosives allegedly stolen from the defendant's Monroe, Washington, quarry site.

Plaintiff's action sounded in both strict liability and negligence. The trial court granted defendant's motion for summary judgment on the strict liability cause of action and dismissed it. The case was then tried to a jury on the negligence theory. The jury returned a defense verdict. Plaintiff's motion for a new trial was denied; judgment for the defendant was entered and the plaintiff University brings this appeal.

The facts leading to the explosion are these.

An 18–year–old young man was employed as a blaster's helper at the defendant's rock quarry. He had dated a young woman through their high school years. Shortly before the events in question, she went across state to attend Washington State University. Perceiving that they were becoming estranged because of distance and her new

friends at school, the young man became increasingly insistent that she leave school and return to her home near where he lived. This she declined to do.

The day before the explosion she learned he was on his way to Pullman to confront her. Campus police were alerted and the young woman moved to a different floor of the dormitory for the night. The young man arrived that night but, being unable to locate her at the dormitory, left peacefully. The next day the young woman agreed to meet with him in her resident adviser's room and did so. When the adviser ultimately asked him to leave, he told the young woman that she "would feel a concussion" from his car. When she expressed disbelief, he said "[y]ou can say what you want, but I do have it and it is hidden".

The young man left but shortly thereafter returned with a satchel. He knocked on her door and then began kicking it. Finally he announced that if she didn't open the door, "a lot of innocent people are going to get hurt" and added, "with 50 pounds of dynamite." The young woman and other students on the floor panicked and fled past him and down the stairs passing the campus police on their way up. One of the students pointed to the young man and said "he has a bomb". When the officers arrived, they found the young man screaming, shouting obscenities and threatening to blow them all up. In his right hand he held a battery and in his left hand a wire which led to the satchel containing what appeared to be industrial dynamite. The officers tried to calm him down. When this proved unsuccessful, they tried to disarm him. An explosion ensued. It killed the young man, seriously injured two campus police officers and caused extensive damage to the dormitory and its contents.

The appeal by the plaintiff University raises one principal issue.

### Issue

Is the doctrine of strict liability for abnormally dangerous conditions and activities applicable in this case?

## Decision

CONCLUSION. No. The doctrine of strict liability for abnormally dangerous conditions and activities is limited to the kind of harm, the possibility of which makes the defendant's activity abnormally dangerous. The damage to the plaintiff's dormitory, which resulted from the detonation of explosives that had apparently been stolen from the defendant's quarry or explosives magazine some 300 miles away, is not the kind of harm which makes the storage and use of explosives abnormally dangerous. The trial court did not err, therefore, when as a matter of law it dismissed the plaintiff's strict liability cause of action.

The following standard is used in this jurisdiction to determine whether or not strict liability will be imposed:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Restatement (Second) of Torts § 519 (1977); *Siegler v. Kuhlman,* 81 Wn.2d 448, 458, 502 P.2d 1181 (1972), *cert. denied,* 411 U.S. 983, 36 L. Ed. 2d 959, 93 S. Ct. 2275 (1973); *Pacific Northwest Bell Tel. Co. v. Port of Seattle,* 80 Wn.2d 59, 64, 491 P.2d 1037 (1971).

It is true, as the plaintiff points out, that the storage or use of explosives in quantity in a dangerous place have often been held to be abnormally dangerous activities. For example, in *Erickson Paving Co. v. Yardley Drilling Co.,* 7 Wn. App. 681, 683, 502 P.2d 334 (1972) we held that blasting done on a highway construction project was an abnormally dangerous activity and imposed strict liability on a contractor for damages caused to nearby equipment by the contractor's blasting operations. In *Siegler,* which did not involve commercial explosives as such, but did involve the commercial highway transport of large quantities of gasoline, the State Supreme Court also held the motor carrier

strictly liable when its gasoline laden semitrailer broke loose for unexplained reasons, exploded into flames and caused the death of a motorist using the highway.

The doctrine of strict liability for abnormally dangerous conditions and activities, however, is not without limits. In discussing the extent of that liability, Dean Prosser instructs:

> It is one thing to say that a dangerous enterprise must pay its way within reasonable limits, and quite another to say that it must bear responsibility for every extreme of harm that it may cause. The same practical necessity for the restriction of liability within some reasonable bounds, which arises in connection with problems of "proximate cause" in negligence cases, demands here that some limit be set.

(Footnote omitted.) W. Prosser, *Torts* § 79, at 517 (4th ed. 1971).

■ The specific limit to the doctrine of strict liability for abnormally dangerous conditions and activities is stated in Restatement (Second) of Torts § 519(2):

> *This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.*

(Italics ours.) As the comment to this subsection, subsection (2), further explains:

> *e. Extent of protection.* The rule of strict liability stated in Subsection (1) applies only to harm that is within the scope of the abnormal risk that is the basis of the liability. One who carries on an abnormally dangerous activity is not under strict liability for every possible harm that may result from carrying it on. For example, the thing that makes the storage of dynamite in a city abnormally dangerous is the risk of harm to those in the vicinity if it should explode. If an explosion occurs and does harm to persons, land or chattels in the vicinity, the rule stated in Subsection (1) applies. If, however, there is no explosion and for some unexpected reason a part of the wall of the magazine in which the dynamite is stored falls upon a pedestrian on the highway upon which the magazine abuts, the rule stated in Subsection (1) has no application. In this case the liability, if any, will be

dependent upon proof of negligence in the construction or maintenance of the wall. So also, the transportation of dynamite or other high explosives by truck through the streets of a city is abnormally dangerous for the same reason as that which makes the storage of the explosives abnormally dangerous. If the dynamite explodes in the course of the transportation, a private person transporting it is subject to liability under the rule stated in Subsection (1), although he has exercised the utmost care. On the other hand, if the vehicle containing the explosives runs over a pedestrian, he cannot recover unless the vehicle was driven negligently.

Restatement (Second) of Torts § 519, comment *e,* at 35 (1977).

■ Applying the foregoing principles to the case at bench, it is clear that what makes the defendant's storage and use of explosives abnormally dangerous is the risk of harm to persons and property within the range of the explosives' destructive force in the event of an explosion. Under the rule stated in Restatement (Second) of Torts § 519(2), the defendant's strict liability is thus limited to harm of that kind since it is the possibility of such harm that makes the defendant's storage and use of explosives abnormally dangerous. *See Foster v. Preston Mill Co.,* 44 Wn.2d 440, 444–45, 268 P.2d 645 (1954); *Harper v. Regency Dev. Co.,* 399 So. 2d 248, 253 (Ala. 1981); *Yukon Equip., Inc. v. Fireman's Fund Ins. Co.,* 585 P.2d 1206, 1211–12 (Alaska 1978). *See also Litzmann v. Humboldt Cy.,* 273 P.2d 82, 88 (Cal. Dist. Ct. App. 1954).

Here, the defendant's explosives magazine did not blow up causing harm to persons or property in the vicinity, nor was damage caused by blasting at its quarry site. The rule of strict liability for abnormally dangerous conditions and activities does not apply in this case because the harm that did occur, namely the apparent theft of explosives by an employee and his use of same in a bombing incident 300 miles away, was not the kind of harm that made the defendant's blasting and explosive storage operations abnormally dangerous. The trial court did not err when it

so ruled as a matter of law. *Litzmann,* at 88.

We will refer more briefly to the plaintiff's remaining assignments of error.

Whether the acts of the defendant's employee, who apparently stole explosives from the defendant and fashioned a bomb therefrom, constituted an intervening act between any negligence of the defendant and the explosion was an issue of fact. *Daly v. Lynch,* 24 Wn. App. 69, 75–76, 600 P.2d 592 (1979). By the trial court's instruction 14, the jury was instructed on intervening cause by a pattern jury instruction (WPI 12.05) and by an instruction using appropriate clarifying language from *Smith v. Acme Paving Co.,* 16 Wn. App. 389, 396, 558 P.2d 811 (1976) (court's instruction 15). Under the facts that was not error.

The case at bench was tried on a negligence theory. Since the defendant presented some evidence from which negligent involvement on the part of plaintiff's campus police officers in the events leading to detonation of the bomb could be inferred, the trial court did not err by also instructing on contributory negligence. In any event, the jury by special verdict found that there was no negligence by the defendant which was a proximate cause of damage to the plaintiff. *See Gaunt v. Alaska S.S. Co.,* 57 Wn.2d 847, 848, 360 P.2d 354 (1961); *Nelson v. Mueller,* 85 Wn.2d 234, 236–37, 533 P.2d 383 (1975).

The trial court also instructed the jury on the various duties imposed by state statutes and regulations on the defendant in utilizing, caring for and storing explosives. One such instruction, instruction 11, imposed the "highest degree of care" on the defendant.[1] The jury was also instructed that any violation of such a statute or regulation

---

[1] "You are instructed that the statutes of the State of Washington require any company storing ultra hazardous materials such as dynamite and/or blasting caps on its premises is required to exert the highest degree of care to keep all of those materials in close custody to prevent their being used in an unauthorized manner. Any party storing or utilizing such explosives is liable for all the natural and probable consequences which flow from any breach of that duty." Instruction 11.

would be negligence as a matter of law.[2] With respect to such violations, proximate cause was properly a factual issue in this case. *Ward v. Zeugner,* 64 Wn.2d 570, 574, 392 P.2d 811 (1964); *Eichler v. Yakima Vly. Transp. Co.,* 83 Wn.2d 1, 4, 514 P.2d 1387 (1973). The trial court did not err in submitting those issues to the jury (see footnote 2) rather than deciding them as a matter of law.

Plaintiff assigns error to the failure of the trial court to give a number of jury instructions. We perceive no error in that regard. Several of the plaintiff's proposed instructions related to the strict liability issue which had properly been removed from the case. Others were correctly refused because the evidence did not support them, *Richards v. Sicks' Rainier Brewing Co.,* 64 Wn.2d 357, 360, 391 P.2d 960, 2 A.L.R.3d 430 (1964), and the subject matter of the remainder of the proposed instructions was adequately covered by the instructions which were given, *Harlan v. Aetna Life Ins. Co.,* 6 Wn. App. 837, 839, 496 P.2d 532 (1972). The trial court's instructions adequately covered the issues and permitted each party to fully argue its theory of the case.

Plaintiff's remaining assignments of error relate to discretionary rulings made by the trial court on evidentiary matters during the course of the trial. Neither abuse of discretion or prejudice has been shown in that regard.

Affirmed.

SWANSON, J., and SODERLAND, J. Pro Tem., concur.

Review denied by Supreme Court September 7, 1984.

---

[2]"The violation, if you find any, of a statute, or regulation is negligence as a matter of law. Such negligence has the same effect as any other act of negligence, and in order to form the basis for recovery must be a proximate cause of the loss." Instruction 13.