DECISION
{¶ 1} In this original action, relator, Autozone, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its January 11, 2005 order granting Stephen Gaydosh's ("Gaydosh") application for an award of total loss of vision in his left eye pursuant to R.C.4123.57(B) and to enter an order denying said award. We deny the requested writ for the following reasons.
 {¶ 2} On January 16, 2004, Gaydosh injured his left eye while acting in the course of his employment with relator. The commission allowed an industrial claim for "perforated globe left eye."
 {¶ 3} On May 6, 2004, Gaydosh underwent an examination by ophthalmologist Dr. Francis S. Mah. Dr. Mah noted that Gaydosh suffered a scleral and corneal laceration and lost the lens of his left eye during the course of the injury and subsequent repair. Dr. Mah further observed that claimant had lost at least 75 to 80 percent of his vision. On August 12, 2004, Gaydosh filed for an award for total loss of vision based upon the loss of his left lens.
 {¶ 4} On October 1, 2004, Gaydosh underwent a second examination by Dr. Thomas B. Magness at the request of relator. Dr. Magness stated in his October 7, 2004 report that Gaydosh's "best corrected visual acuity is 20/200." (Emphasis added.)
 {¶ 5} A District Hearing Officer ("DHO") conducted a hearing on October 19, 2004 and issued an order denying Gaydosh's motion for an award for 100 percent total loss of vision. The DHO further held that Gaydosh's reliance on State ex rel. Parsec,Inc. v. Agin, 155 Ohio App.3d 303, 2003-Ohio-6186, holding that loss of a lens was sufficient to prove 100 percent total loss, was erroneous. The DHO noted that Parsec still required an injured claimant to show that he suffered a 100 percent loss of vision. The DHO determined that, pursuant to R.C. 4123.57(B), Gaydosh was not entitled to an award because the examining doctors reported that Gaydosh still had 20 percent vision remaining.
 {¶ 6} Gaydosh appealed the DHO's order and a second hearing was conducted by a staff hearing officer ("SHO") on January 11, 2005. The SHO vacated the DHO's order and granted Gaydosh's C-86 motion based upon Parsec; State ex rel. Kroger Co. v. Stover
(1987), 31 Ohio St.3d 229; and State ex rel. Gen. Elec. Corp. v.Indus. Comm., 103 Ohio St.3d 420, 2004-Ohio-5585. A second SHO denied relator's administrative appeal.
 {¶ 7} On June 17, 2005, relator filed a mandamus action alleging the commission abused its discretion in concluding that Gaydosh suffered 100 percent loss of his vision. Relator contended that such a determination contradicted relevant case law and the reports of the examining doctors. Pursuant to Civ.R. 53(C) and Loc.R. 12(M), this matter was referred to a magistrate of this court.
 {¶ 8} On November 15, 2005, the magistrate rendered his decision. (Attached as Appendix A.) Based upon his application of R.C. 4123.57(B) and the case law applicable to the facts herein, the magistrate found that Gaydosh's loss of his left lens was significant enough to cause a 100 percent loss of uncorrected vision. Furthermore, the magistrate determined that Dr. Mah's conclusion that Gaydosh suffered at least 75 to 80 percent vision loss may have been "intended as a future corrected vision loss after more surgery." (Magistrate's decision, at 9.) Based upon the foregoing determinations, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 9} On November 30, 2005, relator filed its objections to the magistrate's decision to deny relator's request. Relator argues that the magistrate erred as a matter of fact and as a matter of law in concluding that Gaydosh lost 100 percent of his vision and was thus entitled to a 100 percent loss of vision award.
 {¶ 10} In order for us to issue a writ of mandamus, relator must show that it has a legal right to relief from the determination of the commission and that the commission has a legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. For this court to find such a right, relator must show that the commission abused its discretion by entering an order not supported by the evidence on record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. However, where even some evidence on record supports the commission's order it must be held that there was no abuse of discretion and mandamus may not be granted. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 11} The relevant inquiry necessary for a determination is whether Gaydosh suffered 100 percent vision loss under R.C.4123.57(B). R.C. 4123.57(B) states, in pertinent part, that partial disability shall be paid as follows:
For the loss of the sight of an eye, one hundred twenty-five weeks.
For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as a result of the injury or occupational disease.
 {¶ 12} Based upon the language of the statute, relator argues that Gaydosh is not entitled to compensation for total loss because his corrected visual acuity was 20/200, rendering him only legally blind. Dr. Magness reported that "visual acuity (with correction) was 20/20 in the right eye and 20/200 in the left eye." (Dr. Magness' report, October 5, 2004.) Dr. Mah opined that "he has lost at least 75 to 80% of his vision and this does not include obviously the surgery and hardship * * *" (Dr. Mah's report, May 18, 2004.) Therefore, according to relator, there is no medical evidence to substantiate a claim for 100 percent loss of vision.
 {¶ 13} In support of its position, relator relies upon Stateex rel. Nastuik v. Indus. Comm. (1945), 145 Ohio St. 287. InNastuik, the Ohio Supreme Court concluded that a visual acuity measured at only 20/200 still left a person with 20 percent vision, which does not equate a total loss. If Nastuik is controlling authority, Gaydosh did not suffer a 100 percent loss of his vision.
 {¶ 14} Nastuik was based on Section 1465-90 of the Ohio General Code, which required that damages be calculated on the total percentage of vision lost after correction, surgery, or repair. That section has since been replaced with R.C.4123.57(B), which requires that compensation be based upon the party's total loss of uncorrected vision. See State ex rel.Spangler Candy Co. v. Indus. Comm. (1988), 36 Ohio St.3d 231; and Gen. Elec. Corp., supra. Accordingly, in light of the legislative change, Nastuik is not controlling authority and provides no guidance under the current statute. Instead, the issue in this appeal is whether the loss of a natural lens qualifies as "the loss of the sight of an eye" for purposes of R.C. 4123.57(B).
 {¶ 15} Although there appear to be no Ohio decisions that discuss what constitutes "blindness" or "loss of vision," decisions in other jurisdictions provide guidance. "The ability to perceive light and objects, but no ability to distinguish and recognize objects, is not sight, but blindness." Murray v. AetnaLife Ins. Co. (1916), 243 F. 285, 286. "`Entire loss' of the use of an eye does not mean blindness; the term has been defined generally to mean `that the sight left is of no practical use.'"Rice v. Military Sales Serv. Co. (1980), 621 F.2d 83, citingWallace v. Ins. Co. of North America (1969), 415 F.2d 542, 544. "[T]he evidence reveals that Appellant's vision in his right eye * * * is the condition aphakia, or no effective vision at all."Lease v. Baker, McHenry Welch, Inc. (1970), 147 Ind.App. 3,7. At the hearing before the DHO, Gaydosh stated that he "could see blurry shapes and light changes and very vague images." (Relator's objections at 3, fn. 3.) Although Gaydosh did not specifically state that the loss of his lens resulted in a complete loss of vision, it would appear obvious that one cannot see without a lens to focus the light entering the eye. Therefore, based upon the evidence presented, it is reasonable to find that respondent Gaydosh, who suffered aphakia or loss of the use of his lens, suffered a total loss of vision in that eye.
 {¶ 16} The magistrate relied upon Parsec, in which the injured party suffered from a cataract as a result of an industrial injury that required his original lens to be removed and replaced with an artificial lens. In Parsec, it was undisputed that the injury to the claimant's cornea required its surgical removal and an artificial implant to restore his vision. As a result, we held that the loss of that natural lens was sufficient to qualify as a total loss of vision for purposes of R.C. 4123.57(B).
 {¶ 17} This case is factually very similar to Parsec. Two separate examinations of Gaydosh's injuries revealed that he was aphakic, meaning he no longer had the natural lens of his eye. It is undisputed that the loss of the lens was the result of Gaydosh's industrial injury. Therefore, we agree with the magistrate that, under Parsec, "the commission can conclude that the loss of the natural lens due to an industrial injury produces a total loss of uncorrected vision of the eye." (Magistrate's decision, at 8.) (Emphasis added.)
 {¶ 18} Relator asserts that, although Parsec granted an award for 100 percent vision loss, the claimant in Parsec still had the burden of showing that he suffered a 100 percent loss of vision prior to the removal of his natural lens. Therefore, even though Parsec applies insofar as the claimants in each case lost the lenses of their eyes, relator suggests that Gaydosh is not entitled to recovery because there is no evidence that he suffered a complete loss of vision.
 {¶ 19} We believe that relator's argument fails in light ofGen. Elec. Corp. In Gen. Elec. Corp., the Ohio Supreme Court found that claimant's corneal transplant was not restorative and thus awarded claimant a scheduled-loss award. In doing so, the court recognized that some claimants might receive a full loss award for only a partial loss of vision. However, the court observed that R.C. 4123.95 is to be liberally interpreted and "the beneficent intent and the social policies underlying the worker compensation law do not necessarily produce mathematically logical results in every case." Gen. Elec. Corp., at 426, quoting Dawson's Charter Serv. v. Chin (1986), 68 Md.App. 433,444, 511 A.2d 1138.
 {¶ 20} In Parsec, the claimant's lens had been rendered useless and required removal. Gaydosh also lost his lens. In both cases, the claimants did not have functioning lenses. One cannot see without a functioning lens. Based upon the facts and circumstances of this case and the holdings in Parsec and Gen.Elec. Corp., relator's objections are overruled.
 {¶ 21} Pursuant to Civ.R. 53(E)(4), we have conducted a full review of the magistrate's decision, relator's objections and all submitted memoranda. For the reasons stated, we overrule relator's objections and adopt the decision of the magistrate. Relator's request for a writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Klatt, P.J., and Brown, J., concur.
 IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
The State of Ohio ex rel. : Autozone, Inc., : :
Relator, : :
v. : No. 05AP-634 :
Industrial Commission of Ohio : and Stephen Gaydosh, : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 15, 2005 Crabbe Brown James, LLP, and John C. Albert, for relator.
Jim Petro, Attorney General, and Derrick Knapp, for respondent Industrial Commission of Ohio.
Ward, Kaps, Bainbridge, Maurer Melvin, L.L.C., Thomas H.Bainbridge, Jr., and William J. Melvin, for respondent Stephen Gaydosh.
 IN MANDAMUS {¶ 22} In this original action, relator, Autozone, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting respondent Stephen Gaydosh an R.C. 4123.57(B) award for the total loss of vision of his left eye, and to enter an order denying said award.
Findings of Fact:
 {¶ 23} 1. On January 16, 2004, respondent Stephen Gaydosh ("claimant") injured his left eye while employed as a store manager for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "perforated globe left eye," and is assigned claim number 04-803748.
 {¶ 24} 2. On May 6, 2004, claimant was examined by ophthalmologist Francis S. Mah, M.D. In his report dated May 18, 2004, Dr. Mah states:
* * * The injury was significant and Mr. Gaydosh is fortunate to still have his eye. He has a corneal and scleral laceration, which extends from the 9 o'clock area to the central visual axis up to the 12 o'clock area and beyond the 12 o'clock area. He is aphakic due to the loss of the lens during the trauma and repair. In terms of vision loss today, he is legally blind, 20/200 although he does have better potential for vision. Most likely his vision will never be as good as it had been prior to the injury, which it is assumed his vision is [sic] 20/20 in the left eye. At this stage, I would say that he has lost at least 75 to 80% of his vision and this does not include obviously the surgery and hardship that he has had to entail [sic] from the rehabilitation of his eye.
 {¶ 25} 3. On August 12, 2004, claimant moved for an award of total loss of vision of his left eye based upon the loss of the lens of the left eye. In support, claimant submitted the May 18, 2004 report of Dr. Mah.
 {¶ 26} 4. On October 1, 2004, at relator's request, claimant was examined by Thomas B. Magness, M.D. In a report dated October 5, 2004, Dr. Magness states:
* * * He presented for a complete ocular evaluation.
Visual acuity (with correction) was 20/20 in the right eye and 20/200 in the left eye. External examination revealed a corneal scar involving the central portion of the cornea in the left eye. Iris was adherent to the cornea superiorally. Vitreous was also seen extending into the anterior chamber. The eye was aphakic. Examination of the right eye was unremarkable. Examination of the left fundus revealed a cup-to-disc ratio of 0.3. A detailed view of the macula was not possible secondary to the corneal scar, but no gross abnormalities were seen.
IMPRESSION: Penetrating eye injury — left eye
I feel the claimant's vision is consistent with the physical findings in my exam. The corneal scar is severely limiting his vision. A penetrating Keratoplasty, vitrectomy, and lens implant would be necessary to provide visual rehabilitation. I feel Mr. Gaydosh sustained loss of vision in the left eye directly and solely due to the industrial injury which occurred on January 16, 2004.
 {¶ 27} 5. On October 7, 2004, Dr. Magness wrote:
[One] What is the current extent of impairment present as it relates to the claimant's left eye in terms of the claimant's objective physical findings? Please detail The claimant's vision in the left eye is severely limited secondary to the corneal scar. His best corrected visual acuity is approximately 20/200.
[Two] Specifically, to what degree, if any, has the claimant sustained a loss of use of the left eye as a result of the industrial injury? The claimant has suffered a substantial visual loss in the left eye due to the industrial injury. As stated above his best corrected visual acuity is 20/200. This limits any useful reading vision out of his left eye. It would also limit his stereopsis.
[Three] In summary, has Mr. Gaydosh sustained a loss of vision in the left eye as a direct and sole result of the industrial injury of January 16, 2004? Please give a detailed explanation regarding the basis for your opinion. Mr. Gaydosh sustained loss of vision in his left eye directly and solely as a result of the industrial injury as of January 16, 2004. The absent [sic] of his lens and corneal scar severely limit his vision. As stated above[,] his best visual acuity is 20/200.
 {¶ 28} 6. On October 26, 2004, Edward J. Jagela, O.D., wrote:
Stephen Gaydosh's visual acuity on 6/29/1999 without correction was documented to be 20/20-1 right eye and 20/20-1 left eye on that given day. A refraction had been done several months prior on 3/9/1999 and the prescription was right eye plano -0.50 × 125 20/20 clear and left eye plano -0.25 × 0.15 20/20 clear. The optical prescription was to be worn just on an as needed basis to sharpen his vision mainly for fine detail at a distance and/or night driving. Without correction at that time Stephen could see 20/20 however, it may be just a slight blurry 20/20 unless the glasses were used. If Stephen were to wear the glasses at that time his vision did improve to a crystal clear 20/20 both right and left eyes.
 {¶ 29} 7. Following an October 19, 2004 hearing, a district hearing officer ("DHO") issued an order denying claimant's motion. The DHO order states:
Based on the request by injured worker's legal representative at today's hearing, District Hearing Officer clarifies that the C-86 motion filed 08/12/2004 by injured worker specifically requests a scheduled loss/loss of use award regarding "100%
TOTAL LOSS OF VISION LEFT EYE".
Based on ORC 4123.57(B) and the fact that none of the medical evidence on file, which includes the letters by Dr. Magness dated 10/05/2004 and 10/07/2004 plus the 05/18/2004 medical report by Dr. Mah, supports a 100% total loss of vision regarding injured worker's left eye, District Hearing Officer denies injured worker's C-86 motion filed 08/12/2004 finding injured worker's request does not comply with the requirements of Memo F1 of the Industrial Commission Policy Statements and Guidelines in order for an award of 100% total loss of vision for injured worker's left eye to be ordered.
Injured worker's attorney at today's hearing argues not from a medical standpoint that his client is entitled to a 100% total loss of vision award but based on the Ohio Court of Appeal's decision in [State ex rel. Parsec, Inc. v. Agin,155 Ohio App.3d 303, 2003-Ohio-6186] which is argued by injured worker's attorney gives injured worker an automatic 100% total loss of vision award based on removal of injured worker's left lens in his left eye (i.e. 01/16/2004 operative report) as a result of the allowed condition of "PERFORATED GLOBE LEFT EYE". However, District Hearing Officer rejects the argument posed by injured worker's attorney based on the fact that a careful review of theParsec decision still requires the injured worker in this claim to meet their burden of proof by providing evidence from a medical professional that removal of injured worker's left lens produces a 100% total loss of vision when comparing injured worker's percentage of actual uncorrected vision before the industrial injury to the percentage of remaining uncorrected vision after the industrial injury. In light of the fact that injured worker's own treating physician, Dr. Mah, and employer's reviewing physician, Dr. Magness, both state that injured worker has some left eye vision loss as the result of the 01/16/2004 industrial accident but not 100% total left eye vision loss.
District Hearing Officer denies injured worker's modified C-86 motion filed 08/12/2004 requesting a scheduled loss/loss of use award for "100% TOTAL LOSS OF VISION LEFT EYE".
District Hearing Officer notes that today's decision, in light of injured worker's legal representative modifying today's C-86 motion to address a specific issue, does not preclude injured worker from requesting in the future a scheduled loss/loss of use award under ORC 4123.57(B) for "LOSS OF VISION LEFT EYE" for any percentage less than 100%.
(Emphasis sic.)
 {¶ 30} 8. Claimant administratively appealed the DHO order of October 19, 2004.
 {¶ 31} 9. Following a January 11, 2005 hearing, a staff hearing officer ("SHO") issued an order stating:
The order of the District Hearing Officer, from the hearing dated 10/19/2004, is VACATED. Therefore, the Appeal, filed 11/02/2004, is GRANTED TO THE EXTENT OF THIS ORDER.
Therefore, the C-86, filed 08/12/2004, is GRANTED TO THE EXTENT OF THIS ORDER.
Based upon the 05/18/2004 report of Dr. Mah to the effect that claimant lost the lens of his left eye as a result of his injury and repair. In Parsec the courts [sic] dealt with a case wherein claimant's lens (damaged by industrially-induced cataracts) was similarly removed, and awarded total loss of use.
Accordingly in reliance upon [State ex rel. Kroger Co. v.Stover (1987), 31 Ohio St.3d 229], [State ex rel. GeneralElectric Corp. v. Indus. Comm., 103 Ohio St.3d 420,2004-Ohio-5585], Parsec, and ORC 4123.95, claimant is awarded total loss of use of his left eye.
Staff Hearing Officer notes that evidence submitted at hearing (i.e. the 10/26/2004 report of Dr. Jagela) indicates that claimant, prior to his injury, had essentially normal uncorrected vision.
(Emphasis sic.)
 {¶ 32} 10. On February 11, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO order of January 11, 2005.
 {¶ 33} 11. On June 17, 2005, relator, Autozone, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 34} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 35} R.C. 4123.57(B) sets forth a schedule of compensation payable for enumerated losses. The statute provides:
For the loss of the sight of an eye, one hundred twenty-five weeks.
For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease.
 {¶ 36} In State ex rel. Parsec, Inc. v. Agin,155 Ohio App.3d 303, 2003-Ohio-6186, this court denied a writ of mandamus where the employer claimed the commission had abused its discretion in awarding R.C. 4123.57(B) compensation for a total loss of vision of the left eye. In Parsec, it was undisputed that the industrial injury produced, among other problems, a traumatic cataract in the left eye and that surgery was necessarily performed to remove the natural lens and insert an artificial lens. Apparently, the surgery also included repair of a corneal laceration to prevent the leakage of aqueous humor. Following the eye surgery, which was successful, the claimant's vision in the left eye was restored to 20/25.
 {¶ 37} Applying State ex rel. Kroger Co. v. Stover (1987),31 Ohio St.3d 229, this court, in Parsec, held that the artificial lens implant was a correction to vision and, thus, the success of the implant surgery cannot be considered in determining the claimant's award under R.C. 4123.57(B).
 {¶ 38} In Parsec, the commission, in awarding R.C.4123.57(B) compensation for total loss of vision of the left eye, necessarily found that the "total traumatic cataract" produced total loss of vision prior to the successful cataract surgery and artificial lens implant. In Parsec, the pre-surgical hospital records described a "defect in the left lens capsule medially with opacification of the lens." Id. at ¶ 8.
 {¶ 39} Relying exclusively upon Dr. Mah's report and citingParsec, the commission, through its SHO, granted an R.C.4123.57(B) award for "total loss of use" of the left eye. The commission specifically relied upon that portion of Dr. Mah's report indicating that claimant had lost the lens of his left eye: "He is aphakic due to the loss of the lens during the trauma and repair."
 {¶ 40} Also in his report, Dr. Mah wrote: "At this stage, I would say that he has lost at least 75 to 80% of his vision." According to relator, Dr. Mah's statement, as quoted immediately above, precludes commission reliance on the report to support an award for total loss of vision of the left eye. The magistrate disagrees.
 {¶ 41} Analysis begins with the observation that it is undisputed that the industrial injury proximately caused aphakia of the left eye, that is, the industrial injury resulted in the loss of the natural lens of the left eye. This fact is undisputed because relator's own doctor, Dr. Magness, also observed that the left eye was aphakic, i.e., that claimant was "absent of his lens."
 {¶ 42} Regardless of what Dr. Mah may have meant when he wrote: "At this stage, I would say that he has lost at least 75 to 80% of his vision," it remains an undisputed fact that the industrial injury caused the loss of the natural lens of the left eye.
 {¶ 43} Under Parsec, the commission can conclude that the loss of the natural lens due to an industrial injury produces a total loss of uncorrected vision of the eye.
 {¶ 44} While equivocal medical opinions are not evidence,State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 657, Dr. Mah's observation that the left eye was aphakic was not equivocal. As previously noted, Dr. Magness concurred in that observation.
 {¶ 45} The question of whether or not Dr. Mah's report is otherwise flawed is not before this court. This court need not reconcile any alleged inconsistency when Dr. Mah opines that claimant was legally blind at 20/200 yet further opines as to a 75 to 80 percent vision loss.
 {¶ 46} However, the magistrate observes that some five months after Dr. Mah's May 6, 2004 examination, Dr. Magness opined that "A penetrating Keratoplasty, vitrectomy, and lens implant would be necessary to provide visual rehabilitation." In his May 18, 2004 report, Dr. Mah wrote: "In terms of vision loss today, he is legally blind, 20/200 although he does have better potential for vision." Dr. Mah does not explain in his report why he feels that claimant has "better potential for vision."
 {¶ 47} It is conceivable that Dr. Mah understood that claimant was a candidate for further surgeries such as those described by Dr. Magness some five months later. It is also conceivable that Dr. Mah's opinion of a 75 to 80 percent vision loss was intended as a prediction of future corrected vision loss after more surgery.
 {¶ 48} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.